[No. 18378.   Department Two.   January 25, 1924.]

THE STATE OF WASHINGTON, *on the Relation of W. E. Dooley & Company, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *Honorable Mitchell Gilliam, Judge, et al., Defendants.*[1]

RECEIVERS (41, 56)—SALE OF PROPERTY—POWER OF COURT—RIGHTS OF JUDGMENT CREDITOR—DISCHARGE OF LIEN. Upon the insolvency of a corporation the court, if it has jurisdiction of the parties, may order a receiver's sale of real property which is subject to a judgment lien, free and clear of the lien, which is transferred to the proceeds of the sale, notwithstanding the statute provides that the judgment shall be a lien upon the property from and after its entry.

Application filed in the supreme court December 7, 1923, for a writ of prohibition to prevent a receiver's sale of property under an order of the superior court for King county, Gilliam, J.   Denied.

*Van Dyke & Thomas,* for plaintiff.

*S. H. Kelleran,* for defendants.

FULLERTON, J.—This is an original application made to this court for a writ of prohibition.

The facts, as we gather them from the record, are in substance these: The Seattle Electrical Supply Company is a corporation organized under the laws of this state. Prior to July 23, 1923, it was a going concern engaged in the electric supply business in the city of Seattle. Long prior to the date named, it acquired and now owns certain real property situated in the city of Seattle. On February 24, 1922, it mortgaged this property to the Penn Mutual Insurance Company to secure a loan made to it by that company. On December 7, 1922, the relator, W. E. Dooley & Company, recovered a judgment against the electric company, and

[1]Reported in 222 Pac. 492.

on December 9th thereafter filed in the cause in which the judgment was entered an application for the appointment of a receiver for the electric company, alleging as grounds therefore that the electric company was insolvent. At the time of the filing of this application, the electric company filed a motion for a new trial of the action in which the relator was awarded a judgment. This motion was taken under advisement and finally denied by the court on April 15, 1923. Following the denial of this motion, the application for a receiver was renewed and the application granted. As such receiver the court appointed one Fred W. Hastings, who immediately qualified as such, and took into his possession all of the property of the electric company, including the real property before mentioned.

In October, 1923, subsequent to the appointment of the receiver for the electric company, and subsequent to the time the receiver as such had taken the property of that company into possession, the relator caused an execution to issue on its judgment, caused the same to be placed in the hands of the sheriff, who made a levy or purported levy on the real property mentioned, and proceeded to advertise the same for sale. Thereupon the receiver petitioned the court for an order recalling the writ of execution and restraining the relator from selling the real property. He further alleged that the relator's judgment was not a lien upon the real property, and asked that the court so adjudge, and that he as receiver be directed and permitted to sell the property free and clear of the purported lien of such judgment. The relator answered the petition, taking issue on its allegations, and contending that the judgment was a lien upon the real property of the electric company first and superior to any right of the receiver

therein, and first and superior to the rights of the
general creditors of the electric company. These con-
tentions were controverted in a reply filed by the re-
ceiver.

When the cause was called for hearing in the su-
perior court, that court declined for the time being to
determine the issues in controversy between the relator
and the receiver, but finding that it was essential to the
interest of all of the parties that the real property of
the insolvent be sold immediately, entered an order em-
powering and directing the receiver to sell the property
subject to the lien of the mortgage of the Penn Mutual
Insurance Company, a certain lien of one E. L. Tapert,
and the lien of the unpaid taxes and assessments there-
on, but free and clear of the lien or claim of lien of the
judgment of the relator; further ordering that the pro-
ceeds of the sale be held by the receiver in a separate
fund and that the lien of the relator, if any it has, be
transferred to the fund to await the final determination
by the court of the respective rights of the parties;
further directing and ordering that the relator with-
draw its writ of execution, and that the sheriff proceed
no farther in the execution thereof. The relief sought
by the present proceeding is a writ prohibiting the
receiver from selling the real property under this order
of the court.

The question presented by the record is a narrow
one. No review of the merits of the order complained
of is sought, nor could it be had in this form of pro-
ceeding. The question is simply, did the court act with-
out or in excess of its jurisdiction in making the order.
In support of the contention that it did so, counsel for
the relator call attention to the statutes which provide
that a judgment shall be a lien on the property of the
judgment debtor from and after its entry, and draw the
conclusion therefrom that it is not within the power

of the court to relieve the property therefrom and make it a charge upon another fund, even though the fund be one derived from the sale of the property. But the statute cited has reference to normal conditions—conditions where the interests involved are those between the debtor and the creditor—not to those where the insolvency of the debtor intervenes and the court is called upon to conserve the property so as to make it go as far as it will in the payment of the insolvent's obligations. Unquestionably, in insolvency proceedings the court has power to direct a sale of the insolvent's property, and if the court in the exercise of its sound discretion finds it to be to the best interests of all concerned that the real property be sold free from encumbrances, there would seem to be no substantial reason why the court may not so direct. To do so is but to carry out the purpose of the insolvency proceedings. It is to conserve the property for the benefit of the general creditors, and it works no injury to the judgment creditor if, as in this instance, his right of lien is made a charge upon proceeds to be derived from the sale.

The authorities may be in conflict on the question, but the general rule is stated in 14A C. J. 1006, in the following language:

"A rule that land should not be decreed to be sold until the amount of the liens thereon and their order of priority have been fixed and established may be departed from where the reason for it ceases and its application would work injury rather than benefit to those interests which it was designed to advance and protect."

So in the same volume at page 1008, it is said:

"The court may order the sale of property of an insolvent corporation, subject to encumbrances, or, if it has jurisdiction of the lienors, it may order the prop-

erty sold discharged from liens, and direct distribution of the proceeds according to the rights of the parties.''

In *Pilliod v. Angola R. & P. Co.*, 46 Ind. App. 719, 91 N. E. 829, the court, speaking of the power of a court administering the property of an insolvent corporation to direct a sale of the property, used this language:

''When the court entertained the petition of the general creditors for the enlargement of the powers of the receiver, it took into its jurisdiction all the title to all the property of the insolvent corporation, and it is this title which is sold by the receiver, and in proceedings of this character the court has the power and authority to direct the sale in any manner it may see proper. It may sell the property of an insolvent corporation subject to liens that are upon the same; or if it has the lien holders before it—and has jurisdiction over them —it may order the property sold by its officers discharged from the lien, as was done in this case, and direct the distribution of proceeds in accordance with the rights of the parties.''

See, also, *First National Bank of Cleveland v. Shedd*, 121 U. S. 74; *Bank v. Trigg Co.*, 106 Va. 327, 56 S. E. 158.

The relator argues, however, that our own case of *Cherry v. Western Washington Industrial Express Co.*, 11 Wash. 586, 40 Pac. 136, announces the contrary rule. But an examination of the facts of the case will show that it has no bearing on the question here presented. In that case the judgment creditor was not made a party to the insolvency proceedings, and we held, because he was not made a party, ''his rights should not have been determined or inquired into in that action.'' There is language in the opinion which, if read apart from the facts, might seem to sustain the contention of the relator, but the distinguishing feature between that case and the present case is that the court there

sought to make orders affecting the rights of the judgment creditor without jurisdiction over his person, while in the present case it had such jurisdiction. Cases from this court having a more direct bearing upon the question presented, although not directly in point, are: *State ex rel. Schwabacher Bros. & Co. v. Superior Court*, 11 Wash. 63, 39 Pac. 244; *State ex rel. Krisch v. Superior Court*, 36 Wash. 91, 78 Pac. 461.

Our conclusion is that the trial court did not exceed its jurisdiction in making the order here in question. The order of this court will, therefore, be that the alternative writ of prohibition heretofore issued be quashed and a peremptory writ denied.

MAIN, C. J., BRIDGES, and MITCHELL, JJ., concur.