[No. 26263. *En Banc.* August 20, 1936.]

THE STATE OF WASHINGTON, *on the Relation of Calvin Guthrie, Plaintiff,* v. W. O. CHAPMAN, *as Judge of the Superior Court for Pierce County, Respondent.*[1]

[1]Reported in 60 P. (2d) 245.

328

*Leo A. McGavick* and *Guy E. Kelly,* for relator.

*Harry H. Johnston* and *John E. Belcher,* for respondent.

STEINERT, J.—Application was made in this court for writ of certiorari to review the proceedings had in a certain cause in the superior court for Pierce county. An alternative writ was issued directing the respondent judge to certify to this court a transcript of the records and proceedings in the court below, or else to show cause why he should not do so. Respondent moved to quash the writ. Thereafter, the clerk of the superior court certified a transcript of the record as requested by relator, and the same was duly filed in this court. We shall dispose of the matter upon its merits, according to the record before us, without regard to the motion to quash the writ.

At the general election held in 1932, relator was elected a county commissioner for Pierce county for the term ending January 9, 1937, and, after duly qualifying as such, entered upon the duties of his office. In October, 1934, relator was charged, by indictment of the grand jury, with the crime of grand larceny

and later, by verdict of a jury, was found guilty of that offense. On May 20, 1935, the court entered judgment of conviction and sentence, from which the relator took an appeal to this court.

On the same day that the judgment of conviction was entered, the other members of the board of county commissioners of Pierce county formally adopted a resolution declaring relator's office forfeited and directing the prosecuting attorney to institute proceedings to remove him from office. The prosecuting attorney thereupon filed an information in the nature of *quo warranto,* demanding judgment of ouster from office against relator. Issue was joined upon the information, and a hearing was had, at the conclusion of which the court made findings and conclusions and thereupon entered judgment of ouster against relator, excluding him from the office formerly held by him. No appeal was taken by the relator either from the resolution adopted by the county commissioners or from the judgment of ouster.

Subsequently, on March 24, 1936, the judgment of conviction in the criminal action against relator was reversed by this court, and a new trial of that action was ordered. *State v. Guthrie,* 185 Wash. 464, 56 P. (2d) 160. On May 1, 1936, which was within one year from the date of entry of the judgment of ouster, relator filed a petition in the superior court requesting a new trial of the ouster proceedings because of the reversal in the criminal action and seeking, also, reinstatement in his former office. A demurrer to the petition was interposed, and, upon a hearing, the court entered an order sustaining the demurrer and denying the petition. The relator, electing to stand upon his petition, then made application to this court for writ of certiorari.

The question before us is whether a public officer

who has been convicted of a felony and is thereupon ousted from office is entitled, upon a reversal of the judgment of conviction, to a reinstatement in his former office. The answer to this question must depend upon the controlling statutory law.

██ Rem. Rev. Stat., § 2289 [P. C. § 8724], provides:

"The conviction of a public officer of any felony or malfeasance in office shall entail, in addition to such other penalty as may be imposed, the forfeiture of his office, and shall disqualify him from ever afterward holding any public office in this state."

A felony is a crime which may be punished by death or by imprisonment in the state penitentiary. Rem. Rev. Stat., § 2253 [P. C. § 8688]. Grand larceny is punishable by imprisonment in the state penitentiary for not more than fifteen years, Rem. Rev. Stat., § 2605 [P. C. § 8948], and is, therefore, a felony.

It will be observed that, under Rem. Rev. Stat., § 2289 [P. C. § 8724], *supra,* conviction of a felony *entails a forfeiture* of office, and not merely a removal or temporary suspension from office. In this case, we are concerned only with the question of a forfeiture of an existing office and not with the right to hold future office.

Rem. Rev. Stat., § 9950 [P. C. § 2349], in so far as it is pertinent here, provides as follows:

"Every office shall become vacant on the happening of either of the following events before the expiration of the term of such officer: . . .
"5. His conviction of an infamous crime, . . ."

Rem. Rev. Stat., § 5113 [P. C. § 2082], defines an infamous crime as one punishable by death or imprisonment in the penitentiary. Under the foregoing statutory definitions, grand larceny is an infamous crime.

██ Rem. Rev. Stat., § 4059 [P. C. § 1678], pro-

vides that the board of county commissioners in each county shall, at its next regular or special meeting after being apprised of any vacancy in any county, township, precinct, or road district office of such county, fill such vacancy by the appointment of some person qualified to hold such office, and that officers thus appointed shall hold office until the next general election and until their successors are elected and qualified. This section includes vacancies in the office of county commissioner. *State ex rel. DeBow v. Mc-Neill,* 127 Wash. 157, 219 Pac. 852.

■ The conviction of grand larceny carried with it, and imposed upon the relator, as a necessary and immediate accompaniment, the forfeiture of his office and, at the same time, created a vacancy in that office. The judgment of ouster constituted a judicial determination of the facts made by the record of relator's conviction and also a legal declaration of his status with respect to the office formerly held by him. That judgment was self-executing and, by its own force and without the aid of process or further action of the court, accomplished the object sought to be obtained by the statute, which was the immediate and effectual divestiture of the relator of all official authority whatever. *Fawcett v. Superior Court,* 15 Wash. 342, 346, 46 Pac. 389, 55 Am. St. 894; *McVeany v. New York,* 80 N. Y. 185, 36 Am. Rep. 600.

The judgment of ouster became fully executed when the forfeiture was accomplished. So far as the relator was concerned, the office became extinct. In this respect, the judgment of ouster had a different, and a more drastic, effect than it would have had if the proceeding had involved merely a removal or suspension arising out of an election contest or a civil service regulation. In the latter instances, reinstatement might be possible if the judgment of ouster were sub-

sequently set aside. But under the statutory law governing forfeitures for convictions of felonies, no procedure or remedy is provided for reinstatement in, or restoration to, office.

Under the mandate of the statute governing the situation then existing, it became the duty of the board of county commissioners to fill the vacancy by the appointment of some person qualified to fill the office. The appointment of a successor filled the office until the next general election and until the successor to such appointee was elected and had qualified. So, from this angle, as well, there was no office to which relator could be restored.

The statutes to which we have referred and the construction placed upon them are justified by these considerations: (1) The public interest demands that public affairs be administered by officers upon whom rests no stigma of conviction for infamous crimes; and (2) the proper administration of public business requires a constancy and continuity of service and therefore demands that it shall not be subjected to the hazards of frequent and uncertain changes of officers during a specified term of office.

In the very nature of things, we may not expect to find very much legal authority touching the question under consideration, for the reason that cases of this kind are, fortunately, infrequent. The only case cited to us, and the only one that we have been able to find, bearing any close similarity to the facts of this case is that of *Becker v. Green County,* 176 Wis. 120, 184 N. W. 715, 186 N. W. 584.

In that case, a county judge had been convicted in a Federal district court for violation of the espionage act and was sentenced to a term of imprisonment. Under the constitution of the state of Wisconsin, conviction of an infamous crime rendered a person in-

eligible to hold any office of trust, and a statute of that state, identical with Rem. Rev. Stat., § 9950 [P. C. § 2349], as quoted above, rendered an office vacant upon conviction of its incumbent of an infamous crime. Execution of the sentence in that case was stayed pending the prosecution of a writ of error to the United States circuit court of appeals. Shortly after the conviction of the judge, the governor of the state appointed a successor to fill the vacancy created in the office. After the expiration of the term of office for which the original incumbent had been elected, the appellate court reversed the judgment and conviction. Thereupon, the judge who had been ousted brought an action to recover his salary from the time of his ouster to the end of the term.

In denying recovery, the supreme court of Wisconsin adverted to the fact that the constitutional provision disqualified the plaintiff from further holding the office of county judge and to the additional fact that the statute created a vacancy in office upon his conviction of an infamous crime. The court also pointed out that the statute made no provision for restoration to office.

It will be here observed that the statutes of this state, quoted above, effect the same result as to forfeiture and vacancy and are, likwise, lacking in any restorative features.

It further appeared in the Wisconsin case that, after the conviction and before its reversal, the legislature of that state amended the statute so as to provide that reversals of such judgments of conviction should forthwith restore the ousted party to his office, if the term of office had not then expired, and, in any event, should entitle him to the emoluments of the office for all the time that he would have served therein had he not been convicted and sentenced. It was upon the amended

334

statute that the plaintiff relied in his action to recover the salary.

Touching that question, the court said:

"Furthermore, it was not within the power of the legislature to make the restorative features of the law applicable to plaintiff. It must be borne in mind that he was effectually divested of any right or title to the office. His status with reference to the office was fixed at the time of his conviction. Thenceforth he was a stranger thereto, as much as any other elector of *Green County*. A successor was lawfully in possession of the office. The legislature could no more restore the plaintiff to the office than it could induct therein one who had never held the same. Such offices must be filled either by election or appointment. They cannot be filled by legislative action. The impotency of the legislature to restore plaintiff to his office is an additional reason for not construing the law so as to vest in him the right to recover the unpaid salary."

This language is very applicable to the present situation, and the reasoning of the Wisconsin court, based on the statutes of that state, proceeds upon the same theory that we have followed in this case.

We are well aware that, in some cases at least, the results flowing from the mandate of the statute may be harsh and at times may seem unjust or undeserved. But the matter is one of statutory regulation, and by that we are governed in this instance. If a change of rule is thought to be desirable, it is for the legislature to make the change.

The order sought to be reviewed is affirmed.

ALL CONCUR.