[No. 28088. Department One. October 28, 1940.]

THE STATE OF WASHINGTON, *on the Relation of Julius W. Austin, Plaintiff,* v. THE SUPERIOR COURT FOR WHATCOM COUNTY, *Hobart S. Dawson, Judge, Respondent.*[1]

[1]Reported in 106 P. (2d) 1077.

*Little, Burgunder & Smith* and *Tom Durham,* for relator.

*Edward E. Johnson* and *F. M. Hamilton,* for respondent.

MAIN, J.—This is an original application in this court for a writ of prohibition to prevent the superior court of Whatcom county from taking further action in a *quo warranto* proceeding.

The relator, Julius W. Austin, was elected a county commissioner of Whatcom county for a term of two years, on November 6, 1934. He was re-elected on November 3, 1936, for a term of four years. During the two-year term, he and one of the other commissioners sold two rock crushers and their fittings, which were the property of the county, to one Nate Schuman, without complying with the law for the sale of personal property owned by a county. Thereafter, and during the second, or four-year, term, an action was brought by the county against the relator and a number of other defendants for the recovery of the value of the rock crushers. On December 4, 1939, a judgment was entered against the relator and a number of the other defendants in the action in the sum of six hundred dollars, upon which a credit of $199.09 was allowed. From that judgment, the relator appealed and, subsequently, filed a supersedeas bond.

Subsequently, and on December 28, 1939, this action in *quo warranto* was instituted by the prosecuting at-

torney of Whatcom county for the purpose of ousting the relator from the office to which he had been elected, by reason of the fact that he had breached the condition of his bond as such commissioner, in that he had not faithfully performed the duties of his office. To the information, the relator demurred, and filed a motion to make more definite and certain and to strike. The demurrer was overruled, and the motion was denied. Thereupon, the relator applied to this court for a writ of prohibition to prevent the court from further proceeding.

Rem. Rev. Stat., § 9950 [P. C. § 2349], provides that:

"Every office shall become vacant on the happening of either of the following events before the expiration of the term of such officer:

"1. The death of the incumbent;

"2. His resignation;

"3. His removal;

"4. His ceasing to be an inhabitant of the district, county, town, or village for which he shall have been elected or appointed, or within which the duties of his office are to be discharged;

"5. His conviction of an infamous crime, or of any offense involving a violation of his official oath;

"6. His refusal or neglect to take his oath of office, or to give or renew his official bond, or to deposit such oath or bond within the time prescribed by law;

"7. The decision of a competent tribunal declaring void his election or appointment;

"8. Whenever a judgment shall be obtained against such officer for breach of the condition of his official bond."

■ The first question is whether this section of the statute, at least in so far as subd. 8 is concerned, was repealed, by implication, by subsequent legislation, and in this regard attention is called to Rem. Rev. Stat., §§ 9935 and 9936 [P. C. §§ 513, 514]. These sections are a part of an act of the legislature (Laws of

1889 and 1890, p. 34), entitled "An Act concerning official bonds." One of the sections provides for the procedure when a bond shall become insufficient, and the other provides for an additional bond and what the result would be if such a bond was not filed. The statute (§ 9950, which is quoted above) covers the matter of when an office becomes vacant and specifies the events the happening of which shall operate to vacate an office.

The sections of the statute above mentioned, covering the matter of bonds, are not in any way in conflict with § 9950. The subject matter of the latter statute is entirely different from the subject matter of the other two. There was no implied repeal.

█ The next question is that the prosecuting attorney had no right to institute *quo warranto* proceedings without first having submitted the matter to the board of county commissioners for a declaration of vacancy.

In *State ex rel. Forstell v. Otis,* 131 Wash. 455, 230 Pac. 414, the court had before it a statute which provided that " 'The removal of a councilman from the ward for which he was elected *shall create a vacancy in such office;*' " and it was there held that there was no necessity for an adjudication of vacancy prior to the one that might be had in the *quo warranto* proceeding. Subdivision 8 of the statute that we are now considering provides that an office shall become vacant whenever a judgment shall be obtained against such officer for breach of the condition of his bond. The statute which the court was there considering and the one which we now have before us are, in effect, substantially the same.

The case of *State ex rel. Austin v. Superior Court,* 2 Wn. (2d) 46, 97 P. (2d) 171, has no application here, because, in that case, the court was considering a

statute which made it the duty of the county commissioners, in the first instance, to determine the sufficiency of the sureties on an official bond of a county officer. There is no such provision in the statute which we are now considering. The prosecuting attorney had the right to proceed in *quo warranto*, as he did.

■■ The next question is whether a *quo warranto* proceeding may be instituted against an officer after the judgment rendered against him has been superseded and is pending in this court on appeal. The statute, by its terms, provides that the office shall become vacant upon the happening of certain events. The vacancy occurs by operation of the statute at the time the event takes place. Under this statute, the office which the relator was holding became vacant when the judgment against him was entered for the breach of the condition of his bond. *State ex rel. Guthrie v. Chapman*, 187 Wash. 327, 60 P. (2d) 245, 106 A. L. R. 640; *State ex rel. Knabb v. Frater*, 198 Wash. 675, 89 P. (2d) 1046.

The subsequent filing of a supersedeas bond would have no effect upon the vacancy created, which had occurred prior thereto, under the holding in the case of *State ex rel. Forstell v. Otis, supra*. A supersedeas will not stay a self-executing judgment. *State ex rel. Martin v. Poindexter*, 43 Wash. 147, 86 Pac. 176; *State ex rel. Holcomb v. Yakey*, 48 Wash. 419, 93 Pac. 928; *Cooper v. Hindley*, 70 Wash. 331, 126 Pac. 916.

■ A judgment of ouster, if one should be entered in this proceeding, would be self-executing. *State ex rel. Austin v. Superior Court*, 2 Wn. (2d) 46, 97 P. (2d) 171. The fact that, if such a judgment was entered, it would be self-executing, does not authorize this court, in a prohibition proceeding, to review the case on its merits.

In the case of *State ex rel. Dooley & Co. v. Superior Court,* 128 Wash. 253, 222 Pac. 492, 35 A. L. R. 252, with reference to an attempt to have reviewed the merits of a controversy in a prohibition proceeding, it was said:

"No review of the merits of the order complained of is sought, nor could it be had in this form of proceeding. The question is simply, did the court act without or in excess of its jurisdiction in making the order."

We do not understand that, in the present proceeding, there is any claim that the court did not have jurisdiction of the subject matter and of the person of the relator.

The writ will be denied.

BLAKE, C. J., MILLARD, and SIMPSON, JJ., concur.

ROBINSON, J. (dissenting)—I am entirely in accord with the specific propositions of law laid down in the majority opinion, but the relator has raised a question which the opinion does not answer. It appears in relator's brief in the following language:

"6. May an officer serving a second term be ousted for a judgment based upon acts or omissions occurring during his first term of office?"

The authorities are said to be about equally divided upon this general question. I quote from the introduction to a note appearing in 17 A. L. R. at pp. 279-288, inclusive:

"The cases on the present question are in conflict. This is due in part to differences in statutes and constitutional provisions, but also in part to a divergence of views with respect to the question whether the subsequent election or appointment condones the prior misconduct. It cannot apparently be said that there is a decided weight of authority on either side of the question, although the courts and text-writers have sometimes regarded the weight of authority as denying

the right to remove one from office because of misconduct during a prior term; and some courts which have held to the contrary have considered that the larger number of cases favored this view. As will be seen from this annotation, the cases, numerically considered, are nearly evenly divided."

After the citation of a number of authorities in the negative, it is said, generally:

"Although, as above shown, there are many cases which hold that misconduct in a prior term of office is not ground for removal of a public officer, there is an almost equal number of cases to the contrary effect, that such misconduct may constitute a ground for removal or impeachment."

In my opinion, many of the cases cited in this note, and particularly under the latter division, while entirely germane to the general subject of the note, are of no special assistance in solving the specific question presented by the instant case, which question is, in fact, a great deal narrower than the relator has stated it. Let us consider, for example, the case to which the note is appended, *Attorney General v. Tufts,* 239 Mass. 458, 131 N. E. 573, 132 N. E. 322, 17 A. L. R. 274. At the time that case was decided, the general laws of Massachusetts provided:

" 'A majority of the justices [of the Supreme-Judicial Court] . . . if sufficient cause is shown therefor and it appears that the public good so requires, may, upon a bill, petition or other process, upon a summary hearing or otherwise remove . . . a county commissioner, sheriff, register of probate and insolvency or district attorney.' "

Acting under the authority of this statute, the attorney general of Massachusetts brought a bill and petition to remove one Tufts from his office as district attorney. Tufts at that time was serving his second term. He moved that the hearing be limited to the acts

alleged to have been committed since his last election, and whether or not the hearing should be so limited was the question before the court for decision. The court said, in part:

"Without at this moment making a final and complete statement of the law, it is enough to say that acts of such nature may be proved to have been committed by the respondent during his first term of office as to constitute 'sufficient cause' for, and to make it appear 'that the public good' requires his removal from office. The single circumstance of a re-election is not enough to prevent inquiry into acts alleged during the first term. Some of the charges referred to in the information relate to matters involving moral obliquity and positive crime of great magnitude committed in connection with the office of district attorney. If proven, they might be found to constitute sufficient cause why the person guilty of them ought no longer to hold that office."

In the instant case, the superior court has no such broad power or jurisdiction to inquire into whether or not the "public good" requires the removal of the relator. The scope of its inquiry is limited by the provisions of the statute under which it purports to act; that is, by Rem. Rev. Stat., § 9950, which, in so far as it is material here, reads as follows:

"Every office shall become vacant on the happening of either of the following events before the expiration of the term of such officer: . . .

"8. Whenever a judgment shall be obtained against such officer for breach of the condition of his official bond."

In my opinion, this language is not at all ambiguous, nor is the meaning and intent of the statute doubtful or obscure. The statute provides, in simple and direct language, that an office held by an incumbent shall become vacant before the expiration of the incumbent's term if a judgment be rendered against the incumbent

"for breach of the condition of his official bond," not "*an* official bond" but "*his* official bond," which phrase, I take it, specifically designates but *one* bond, and that, the official bond covering the term which the incumbent is then serving and from which his ouster is sought. But, at all events, if the language of the statute be ambiguous and of doubtful meaning, and therefore subject to construction, the relator is entitled to the benefit of all doubts. *State ex rel. Fletcher v. Naumann,* 213 Iowa 418, 239 N. W. 93, 81 A. L. R. 483; *In re Diehl,* 47 Ohio App. 17, 189 N. E. 855. The statute is drastically penal in nature, since, as pointed out in the majority opinion, the judgment of ouster is self-executing. This being so, if the threatened judgment of ouster is entered against the relator, he will be immediately removed from his office and he cannot be restored thereto even though he should succeed in establishing, in his pending appeal of the conversion case, that he was wholly innocent of converting county property. *State ex rel. Guthrie v. Chapman,* 187 Wash. 327, 60 P. (2d) 245, 106 A. L. R. 640.

It clearly appears from the application and its attached exhibits, and from the respondent's return in this matter, that, unless this court interposes, the respondent, purporting to enforce § 9950 of the code, will enter a judgment ousting the relator from his office. In so doing, the respondent will, in my opinion, act in excess of the authority conferred by that or any other Washington statute. In this connection, I quote from 50 C. J. 666-667:

"Prohibition may properly be granted where the court or tribunal sought to be restrained is about to make an unauthorized application of judicial power in a matter otherwise properly cognizable by it. It is not essential that the court or other tribunal sought to be restrained be assuming to entertain some cause or proceeding over which it has no control. In other words,

prohibition lies as well to prevent an exercise or unauthorized application of judicial force as an assumption of judicial power not granted by law."

Moreover, if the threatened judgment of ouster is unlawfully entered, the relator will have no adequate remedy of any kind in the ordinary course of law or otherwise, for no appeal, however successful or whatever its result, can effectuate his restoration to office. *State ex rel. Guthrie v. Chapman, supra.* Rem. Rev. Stat., § 1028 [P. C. § 8387], reads, in part, as follows:

"It [the writ of prohibition] may be issued by any court, except police or justices' courts, to an inferior tribunal, or to a corporation, board or person, in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law."

The relator's application should be granted and the writ issued.

ON REHEARING.

[*En Banc.* January 8, 1941.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.