[No. 29082. *En Banc.* June 8, 1943.]

THE STATE OF WASHINGTON *on the Relation of Carroll Carter, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *J. T. Ronald, Judge, Respondent.*[1]

[1] Reported in 138 P. (2d) 843.

*Henry Clay Agnew,* for relator.

*Lloyd Shorett* and *John J. Kennett,* for respondent.

BLAKE, J.—The relator, Carter, is the duly elected and qualified treasurer of King county. He was charged, tried, and convicted on eight counts for violations of § 1 of chapter 72 of the Laws of 1941, p. 187 (Rem. Supp. 1941, § 7612-21), entitled:

"AN ACT relating to labor; declaring the rebating of wages, underpayment of agreed wages and certain deductions from wages to be unlawful; providing penalties; and amending section 1 of chapter 195 of the Laws of 1939."

Judgment and sentence was imposed on April 20, 1943. Shortly thereafter, the prosecuting attorney of King county filed in the superior court an information, in the nature of *quo warranto,* setting up the facts relating to the conviction and judgment and sentence and praying for judgment against Carter ousting him from the office of county treasurer. Upon the filing of the information, the superior court, on April 23, 1943, entered an order requiring Carter to appear on April 30, 1943, and show cause why judgment of ouster should not be entered. On the return day, Carter, appearing specially, interposed a motion to quash the show cause order. The court denied the motion, whereupon Carter, maintaining his special appearance, demurred and filed an answer, and the cause proceeded to trial on the merits. After hearing the evi-

dence, the court announced its intention of entering judgment of ouster. Before such judgment was entered, however, Carter filed his petition in this court for a writ of prohibition. An alternative writ was issued, and the matter is now before us upon the petition and the superior court's return to the alternative writ.

The sole question for determination is whether the superior court acquired jurisdiction of Carter in the *quo warranto* proceedings. *State ex rel. Dooley & Co. v. Superior Court,* 128 Wash. 253, 222 Pac. 492; *State ex rel. Northeast Transp. Co. v. Superior Court,* 3 Wn. (2d) 367, 101 P. (2d) 303; *State ex rel. Austin v. Superior Court,* 6 Wn. (2d) 61, 106 P. (2d) 1077; *State ex rel. O'Brien v. Police Court,* 14 Wn. (2d) 340, 128 P. (2d) 332.

It is conceded that, in the absence of any specific statutory practice, where the court has discretion to permit the issuance of a writ of *quo warranto* or the filing of an information in the nature of such writ, the usual practice is to make application, supported by affidavit, for such leave and for a rule *nisi* to the defendant to show cause why such rule should not be granted. *State ex rel. v. McDiarmid,* 26 Ark. 480; *Harris v. Pounds,* 66 Ga. 123; *The People ex rel. Lewis v. Waite,* 70 Ill. 25; *People ex rel. Brummet v. Moeckel,* 256 Ill. 598, 100 N. E. 272; *In re Bank of Mount Pleasant,* 5 Ohio 250; *People ex rel. Barker v. Kip,* 4 Cowen (N. Y.) 382; *Commonwealth v. Jones,* 12 Pa. St. 365; *State ex rel. Page v. Smith,* 48 Vt. 266; *United States ex rel. Boyd v. Lockwood,* 1 Pin. (Wis.) 359.

Where, however, the legislature has, by statute, defined a substantive right and procedure corresponding to *quo warranto* at common law, the statutory provisions must be followed. *State ex rel. Grisell v. Marlow,* 15 Ohio St. 114; *Comonwealth ex rel. Needles v. Henszey,* 81½ Pa. St. 101; *People ex rel. Lord v. Every,* 38 Mich. 405; *State ex rel. Fitts v. Elliott,* 117 Ala. 172, 23 So. 43; *State ex rel. Diepenbrock v. Gates,* 35 Minn.

385, 28 N. W. 927; *Mills v. State ex rel. Smith*, 2 Wash. 566, 27 Pac. 560. In the case last cited, this court said, p. 569:

"The cases cited by appellee, all being cases either under the common law rule or in compliance with the requirements of the statute of Anne, are not in point. . . . The common law on that subject has been supplanted by the statute—the state has legislated on the subject—and it is to the statute we must look, *not only for the practice* of the court, but for the qualifications of the relator." (Italics ours.)

 Looking to the statute, then, the question is: Did the court, by the issuance and service of the show cause order upon Carter, acquire jurisdiction over him in the *quo warranto* proceedings? To answer this question it is necessary to construe Rem. Rev. Stat., § 1038 [P. C. § 8402], which provides:

"Whenever an information is filed, a *notice* signed by the relator shall be served and returned, *as in other actions*. . . ." (Italics ours.)

In order to construe the section, it is necessary to consider its origin and history. In substance, it first appears as § 472 of subd. (chapter) LII of the Civil Practice Act of 1854, p. 217. Subdivision LII is entitled "Information." It comprises §§ 468 to 483, inclusive, of the Civil Practice Act. These sections, in substance, are the same as what are now known as Rem. Rev. Stat., §§ 1034 to 1048 [P. C. §§ 8398 to 8412], inclusive. Section 472 (the counterpart of Rem. Rev. Stat., § 1038), however, reads as follows:

"Whenever an information is filed, *a summons shall issue thereon, which shall be served and returned as in other actions*. . . ." (Italics ours.)

Now, under subd. (chapter) IV of the Civil Practice Act of 1854, p. 135, summons in civil (other) actions was issued by the clerk of the court upon the filing of a complaint. The summons required the defendant, "if served within the county," to appear and answer

within fifteen days. If he was "served in any other county," he was required to appear in twenty days. Under any reasonable construction of these provisions, it is clear that, as long as the Civil Practice Act of 1854 remained in effect, jurisdiction in *quo warranto* proceedings could not be obtained by the issuance of a show cause order.

In 1860, the legislature enacted a new Civil Practice Act. Chapter III, p. 8, § 18, of that act provided:

"Writs of summons are abolished, and civil actions in the several district courts of this territory shall be commenced by the service upon the defendant of a copy of a complaint, and a *notice*; which *notice* shall be signed by the plaintiff, or his attorney, . . . . The notice shall be substantially as follows: . . .

"To ................................: You are hereby notified that unless you appear in the district court of the .......................... judicial district, on the first day of the next term thereof, which shall commence twenty days or more after the service of this complaint, the same will be taken as confessed, and the prayer thereof granted." (Italics ours.)

Chapter XLVIII (§§ 460 to 475, inclusive) of that act, p. 96, relates to the information in the nature of *quo warranto*. Section 464 is identical with Rem. Rev. Stat., § 1038, providing:

"Whenever an information is filed, a *notice* signed by the relator shall be served and returned *as in other actions*." (Italics ours.)

Again, we think it is clear that, under any reasonable construction of the Civil Practice Act of 1860, there is no room for obtaining jurisdiction in *quo warranto* proceedings by the issuance and service of a show cause order; for, if the notice is to be served and returned "as in other actions," it must notify the defendant that, unless he appears "on the first day of the next term . . . which shall commence *twenty days or more after the service of this complaint* [information], the same will be taken as confessed, . . . ."

In other words, the statute fixes the return day of process. It is not left to the discretion of the court as at common law.

At this point it may be noted that, in reenactments of the Civil Practice Act subsequent to 1860, no change was made in what is now Rem. Rev. Stat., § 1038. However, in the reenactment of 1873, chapter IV, p. 16, the legislature reverted to the *summons* as the process for obtaining jurisdiction in civil actions. It was provided that the summons be signed by the clerk, "tested in the name of the judge . . . and be issued under the seal of the court." The defendant was required to appear and answer within twenty days if served in the county and within thirty days if served in another county. This method of obtaining jurisdiction in civil actions was carried into the code of 1881 (chapter IV, p. 43, Civil Procedure) and, also (in substance) into the Civil Practice Act of 1891 (Laws of 1891, chapter LVIII, p. 99).

In 1893, chapter CXXVII, p. 407, the present method of issuing process and obtaining jurisdiction in civil actions was established: summons to be "subscribed by the plaintiff or his attorney." This is a reversion to the simplicity of process set up in the act of 1860. But, by reason of the failure to substitute the word *summons* for *notice* in § 464 of that act, what appears to be an anomaly was created with respect to the issuance of process in actions in the nature of *quo warranto*. We think the anomaly is more fancied than real.

To hold that the failure to substitute *summons* for *notice* in the section dispenses with the necessity of serving process "as in other actions" would read that phrase out of the statute and attach an unwarranted significance to the word *notice*. The consequence would be, as contended in behalf of respondent, that there would be a reversion to the common-law practice in obtaining jurisdiction in actions in the nature of *quo warranto*. We think no such intention can be imputed to the legislature. That could have been ac-

complished more readily and clearly by omitting the section entirely.

It is true that *notice* connotes something different from *summons* in our practice. But, after all, each is a *process* by which the court obtains jurisdiction. And, when the statute provides that jurisdiction in actions in the nature of *quo warranto* be obtained by the service of *notice* "as in other actions," it can only mean by the same *process* as jurisdiction is obtained in civil actions: by summons requiring defendant to appear and answer in twenty days. We think it immaterial, under Rem. Rev. Stat., § 1038, whether the process be called a summons or a notice.

It is contended that the practice of bringing parties into court upon show cause orders in actions in the nature of *quo warranto* has been countenanced in this jurisdiction. See *State ex rel. Guthrie v. Chapman,* 187 Wash. 327, 60 P. (2d) 245; *State ex rel. Knabb v. Frater,* 198 Wash. 675, 89 P. (2d) 1046. In the *quo warranto* proceedings under consideration in those cases, the respondents appeared generally, so jurisdiction did not depend upon service of valid process. In connection with this point it may not be amiss to note that, in the *quo warranto* proceedings under consideration in *State ex rel. Austin v. Superior Court,* 6 Wn. (2d) 61, 106 P. (2d) 1077, *supra,* jurisdiction was obtained by the service of a twenty-day summons. An examination of the original files in some of the early cases reveals that jurisdiction in actions in the nature of *quo warranto* was obtained by the issuance and service of summons as in civil actions. *Mills v. State ex rel. Smith,* 2 Wash. 566, 27 Pac. 560, *supra; State ex rel. Heilbron v. Van Brocklin,* 8 Wash. 557, 36 Pac. 495; *State ex rel. Hyland v. Peter,* 21 Wash. 243, 57 Pac. 814; *State ex rel. Attorney General v. Seattle Gas & Electric Co.,* 28 Wash. 488, 68 Pac. 946, 70 Pac. 114. Of course these cases and the *Guthrie* and *Knabb* cases are significant here only as showing that there has been a

diversity of opinion among the members of the bar as to the process by which jurisdiction in such cases may be obtained by the court under the provisions of Rem. Rev. Stat., § 1038. It is our view that jurisdiction can be obtained under that section only by *process* having the attributes of a summons in civil actions. Since no such process was served in the *quo warranto* proceedings under consideration, the court did not acquire jurisdiction.

Writ granted.

ALL CONCUR.

