[C.D. 4026.    En Banc.    October 22, 1964.]

*In the Matter of the Disciplinary Proceedings Against*
WILLIAM H. SIMMONS, *an Attorney at Law.*\*

\*Reported in 395 P. (2d) 1013.

*Jeremiah M. Long,* for Board of Governors.

*Philip McIntosh* and *Wm. H. Simmons,* for respondent.

HAMILTON, J.—On September 10, 1952, respondent was admitted to the practice of law. He thereupon commenced practice in Seattle, King County, Washington. In November, 1958, he was elected to and assumed the full-time position of Judge of the Municipal Court of the City of Seattle, Department No. 2. About noon, on July 14, 1960, a Mrs. Betty Adams contacted respondent, in his official capacity, relative to a traffic citation. After some discussion, respondent endorsed the citation as a "warning." Mrs. Adams and he then went to a restaurant and cocktail lounge. Following several cocktails and affectionate expressions, they went to an apartment, where disagreement or misunderstanding as to their respective intentions developed. They left the apartment, respondent returning to his office and Mrs. Adams to downtown Seattle. As an outgrowth of this incident, respondent was charged with a felony—assault with intent to commit rape. Respondent pleaded not guilty. A jury trial ensued resulting in a verdict of guilty.

On February 21, 1961, judgment was entered and respondent was sentenced to serve 10 years in the penitentiary, execution of which sentence was suspended upon condition that respondent resign his position as municipal court judge. Respondent appealed the conviction and continued in his judicial office.

On March 6, 1961, the council of the city of Seattle passed an ordinance declaring vacant the office of Judge of the Municipal Court, Department No. 2, by virtue of respondent's conviction of the crime charged, and requested the Prosecuting Attorney of King County to institute ouster proceedings. The Mayor of the City of Seattle appointed a successor and advised respondent of the ordinance and his action. Respondent refused to honor the ordinance or recognize a successor to his office. He continued to hold

court. On the evening of March 6th, the official records were removed from the court offices.

The prosecuting attorney, on March 7, 1961, served and filed an information in quo warranto together with a 20-day summons. At the same time, the prosecuting attorney applied for an order to restrain respondent from acting as judge of the municipal court during the pendency of the quo warranto proceeding. Respondent was directed to appear in superior court on March 8, 1961, and show cause why he should not be so restrained. Respondent continued to hold court despite the absence of official records, clerical personnel, and the city attorney. He dismissed a number of cases for lack of prosecution due to the absence of counsel for the city. He spent the night of March 7th in the chambers adjacent to the courtroom. On March 8th respondent removed a notice of continuance of pending cases posted on the courtroom door by his successor and dismissed additional cases for lack of prosecution.

On the morning of March 8, 1961, hearing was commenced in superior court upon the order to show cause and respondent's challenge to the jurisdiction of the superior court. Respondent was personally present for a portion of the hearing in the afternoon, and was otherwise at all times represented by counsel.

The superior court, on the morning of March 9, 1961, orally announced its intention and thereafter formally entered a temporary injunction ordering respondent to forthwith vacate the offices of and to cease and desist acting as Judge of the Municipal Court, Department No. 2, pending further order of the court. The record before us in this proceeding is not clear as to whether or not respondent was personally present in superior court at the time the court orally announced its intention to enter the temporary injunction. In any event, respondent returned to the offices of the Municipal Court, Department No. 2, undertook the performance of some functions in connection therewith, and, at 10:36 a.m., was served with a certified copy of the temporary injunction. At 11:45 a.m., respondent departed the offices. Thereafter, a bench warrant was issued out

of superior court directing the sheriff to apprehend and bring respondent before the court to show cause why he should not be adjudged in contempt for his failure or refusal to abide the temporary injunction. The bench warrant fixed bail at $500 and was returnable forthwith, or at 9 a.m., March 10, 1961, if served after 4 p.m. The warrant was served after 4 p.m., and respondent elected not to post bail. As a result, he spent the night in jail. On March 10, 1961, respondent was adjudged in contempt. Respondent did not thereafter seek to physically reclaim or exercise any functions of the office of municipal court judge. He did, however, continue to maintain his claim thereto and to challenge the legality of his removal and of the quo warranto proceedings.

On April 20, 1961, following a contested motion for summary judgment in the quo warranto proceedings, formal judgment of ouster was entered. Respondent appealed from this judgment. This court subsequently affirmed the judgment. *State ex rel. Carroll v. Simmons,* 61 Wn. (2d) 146, 377 P. (2d) 421.

As might be expected, widespread publicity accompanied the foregoing events. Extensive coverage was afforded by all news media. Editorials appeared relating to respondent's activities and the responsibility of the bench and bar. A number of impolitic statements, derogatory of the city officials, the prosecuting attorney, and the action of the superior court, were publicly attributed to respondent.

On July 20, 1961, the Washington State Bar Association initiated disciplinary proceedings by serving a formal complaint, which contained two items of alleged misconduct: (a) The conviction of a crime involving moral turpitude, and (b) the filing of a false affidavit in connection with the appeal of the conviction. Respondent denied the charges. Hearing was deferred pending disposition of respondent's appeal in the criminal proceedings. On January 12, 1962, respondent's conviction was reversed by this court and a new trial granted. *State v. Simmons,* 59 Wn. (2d) 381, 368 P. (2d) 378. The state did not prosecute further.

On June 26, 1962, the bar association served respondent with an amended formal complaint containing nine items of alleged misconduct. Respondent in most part denied the charges and, on August 10, 1962, served interrogatories, going to each of the charges, upon counsel for the bar association. On September 11, 1962, the amended complaint came on for hearing before a hearing panel consisting of one member of the Board of Governors of the Washington State Bar Association, as chairman, and two members of the bar of King County. Respondent's request for answers to his interrogatories was denied, and the hearing proceeded. Respondent was personally present and represented by counsel at all times during the hearing.

On October 3, 1962, the hearing panel filed its findings, conclusions, and recommendations. The hearing panel dismissed four items of alleged misconduct, found respondent had committed five of the items of alleged misconduct, and recommended disbarment. Respondent filed a statement in opposition to the findings, conclusions, and recommendation of the panel. The board of governors, with the exception of the member of the board serving as chairman of the hearing panel, thereafter reviewed the record of the proceedings and, on June 21, 1963, approved and adopted the findings, conclusions, and recommendation of the hearing panel. The proceedings were certified to this court for review and final disposition.

Four of the charges of misconduct, which the hearing panel and the board of governors found respondent had committed, essentially relate to public and published statements made by respondent, particularly concerning the events transpiring during the week beginning on March 6, 1961. In connection with these charges, the hearing panel and board of governors found that respondent did make defiant statements of a derogatory, inflammatory, and offensive nature concerning the actions and attitudes of the city officials, the prosecuting attorney, and the superior court judge hearing the quo warranto proceedings, when he knew, or should have known, that such statements would receive widespread publication. The

hearing panel and the board of governors took judicial notice, evidentially supported by photostatic copies of numerous newspaper articles, of the notoriety attending the statements and concluded that respondent's conduct and reflected attitude constituted, in varying degrees, a violation of Rule for Discipline of Attorneys 1 C, J, and M,[1] and of Canon of Professional Ethics 29,[2] RCW Vol. 0.

The remaining charge of misconduct related to respondent's official and unofficial conduct concerning Mrs. Betty Adams on July 14, 1961. The hearing panel and the board of governors found and concluded, upon this charge, that respondent's conduct violated Rule for Discipline of Attorneys 1 A,[3] C, J, and M, and Canon of Professional Ethics 29.

---

[1]"An attorney at law may be censured, reprimanded, suspended, or disbarred for any of the following causes, hereinafter sometimes referred to as violations of the rules of professional conduct:

". . .

"C. Violation of his oath or duties as an attorney.

". . .

"J. Violation of the canons of ethics of the profession adopted by the supreme court of the state of Washington.

". . .

"M. A course of conduct demonstrating unfitness to practice law." Rule for Discipline of Attorneys 1 C, J, M, RCW Vol. 0.

[2]". . . He should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice." Canon of Professional Ethics 29, RCW Vol. 0.

[3]"An attorney at law may be censured, reprimanded, suspended, or disbarred for any of the following causes, hereinafter sometimes referred to as violations of the rules of professional conduct:

"A. The commission of any act involving moral turpitude, dishonesty, or corruption, whether the same be committed in the course of his relations as an attorney, or otherwise, and whether the same constitutes a felony or misdemeanor or not; and if the act constitutes a felony or misdemeanor, conviction thereof in a criminal proceeding shall not be a condition precedent to disciplinary action. Upon such conviction, however, the judgment and sentence shall be conclusive evidence, at any ensuing disciplinary hearing, of the guilt of the respondent attorney of the crime described in the indictment or information, the statute upon which it is based, and the judgment and sentence. A disciplinary hearing as provided in Rule 7 of these rules shall be had to determine only whether moral turpitude was in fact an element of the crime committed by the respondent attorney." Rule for Discipline of Attorneys 1 A, RCW Vol. 0.

Upon review before this court, respondent challenges the findings, conclusions, and recommendation of the hearing panel and board upon four grounds: (1) Denial of his request for answers to his interrogatories; (2) failure or insufficiency of the proof in connection with the four charges relating to respondent's public and published statements; (3) failure to establish a course of conduct demonstrating respondent's unfitness to practice law; and (4) failure to establish moral turpitude in connection with the charge relating to respondent's conduct concerning Mrs. Betty Adams.

Before approaching a consideration of the findings, conclusions, and recommendation and respondent's challenges thereto, we make the following observations:

(1) A disciplinary proceeding is basically an inquiry into the fitness of a member of the bar, in the light of his conduct, to continue in the practice of the law. It is a special proceeding, neither civil nor criminal, incident to the inherent power of the court to control its officers. It is *sui generis*. *In re Sherman*, 58 Wn. (2d) 1, 354 P. (2d) 888; *In re Little*, 40 Wn. (2d) 421, 244 P. (2d) 255.

(2) Admission to the practice of law before the courts of record of this state is a prerequisite to holding the office of judge of the Municipal Court of the City of Seattle (RCW 35.20.170), and a judge thereof, although prohibited by statute (RCW 35.20.170) from the practice of law during his tenure, remains a member of the bar of this state (RCW 2.48.021).

(3) The Municipal Court of the City of Seattle is not a court of record, and the office of judge of such court is subject to forfeiture. *State ex rel. Carroll v. Simmons, supra.*

(4) By the terms of RCW 9.92.120 and 42.12.010 respondent's conviction, on February 21, 1961, of the felony with which he was charged carried with it the *immediate forfeiture* of his office as judge of the Municipal Court of the City of Seattle, and *then created a vacancy* in that office. Quo warranto proceedings were merely ancillary to and in aid of the forfeiture, not a condition precedent thereto.

Appeal from the conviction did not stay the forfeiture, and appellate reversal of the conviction did not reinstate respondent. *State ex rel. Carroll v. Simmons, supra; State ex rel. Zempel v. Twitchell,* 59 Wn. (2d) 419, 367 P. (2d) 985; *State ex rel. Austin v. Superior Court,* 6 Wn. (2d) 61, 106 P. (2d) 1077; *State ex rel. Knabb v. Frater,* 198 Wash. 675, 89 P. (2d) 1046; *State ex rel. Guthrie v. Chapman,* 187 Wash. 327, 60 P. (2d) 245, 106 A.L.R. 640.

Against the backdrop of these observations, we turn to the issues presented.

In support of his first challenge to the findings, conclusions and recommendation in question, respondent contends that he was entitled, as a matter of right, to receive answers from the Washington State Bar Association to his written interrogatories. In support of this contention, respondent relies upon the case of *Brotsky v. State Bar of California,* 57 Cal. (2d) 287, 19 Cal. Rptr. 153, 368 P. (2d) 697, 94 A.L.R. (2d) 1310, wherein the Supreme Court of the State of California held that the pretrial discovery statutes of that state were applicable, in toto, to a disciplinary proceeding initiated under the California State Bar Act.

In response to this contention, counsel for the bar association asserts: (a) The Rules for Discipline of Attorneys, RCW Vol. 0, do not, directly or indirectly, provide for or adopt the pretrial discovery procedures allowed by the Rules of Pleading, Practice and Procedure 26, 30, 33, and 34, RCW Vol. 0; (b) the case of *Brotsky v. State Bar of California, supra,* is distinguishable upon the facts and the law; and (c) the respondent was not, in any event, prejudiced by the denial because a prehearing stipulation as to certain evidentiary matters, entered into between counsel for the bar association and respondent, was predicated upon the written interrogatories, and, further the evidence ultimately adduced at the hearing was well within the knowledge of respondent.

We do not reach the interesting question as to whether respondent was entitled, as a matter of procedural process, to demand and receive answers to his prehearing written interrogatories. Respondent does not point to any

prejudice attributable to the failure of the bar association to supply the answers requested. And, after careful examination of the undismissed charges, the interrogatories directed thereto, the prehearing stipulation, and the evidence adduced at the hearing, we find no prejudice. We are satisfied none of the evidence introduced by the bar association, in support of the pertinent charges, came as any surprise to respondent. Accordingly, we conclude that respondent's challenge upon this score is without merit.

■ Respondent's second contention challenges the sufficiency of the evidence to support the findings of fact, entered by the hearing panel and adopted by the board of governors, in connection with the four charges relating to respondent's conduct and public utterances during the week commencing March 6, 1961. In support of this contention, respondent cites the case of *In re Little, supra,* a disciplinary proceedings, wherein we stated concerning the burden of proof (p. 430):

". . . Every doubt should be resolved in his [the attorney's] favor, and only upon a clear preponderance of the evidence that the acts charged have been done, and were prompted by improper motives, should disciplinary action be taken. The privilege—and it is a privilege, not a right—to practice his profession cannot be lost to the practitioner upon slight evidence."

In our review of the record in the light of this contention, we narrow and limit our consideration and conclusions to those findings concerning utterances made by respondent during the week in question, with respect to the city officials, the prosecuting attorney, the quo warranto and contempt proceedings, and the superior court judge before whom the latter proceedings were heard.

An epitome of the particular utterances involved is found in the following findings of fact entered by the hearing panel and adopted by the board:

". . . Among such statements was a statement to the effect that the prosecuting attorney of King County 'had no respect for his oath to uphold the law. That's been his attitude since his election. He could have filed *quo warranto* some time ago but he thought I would belly-up.'

He referred to the *quo warranto* proceeding as a 'Gestapo tactic. We better send for Fidel Castro.' He stated the appointment of Towne as his replacement as traffic judge was a silly action by the mayor, and that the mayor and city council acted like a bunch of nincompoops. He also stated that Prosecuting Attorney Carroll 'had suffered a political setback and was trying to get back in this way.' Referring to the contempt proceedings, he said, 'It's either criminal contempt or contempt dreamed up by Judge Shorett. This is judicial tyranny.' " Finding of fact No. 4, Re third and fourth items of the amended formal complaint.

"In the presence of members of the press, respondent referred to Judge Shorett's temporary injunction, saying, 'No, we won't obey the order.'

"From his bench in traffic court, respondent said, 'Judge Shorett is going to issue a restraining order and I'm not going to honor it.'

"At a conference in his office in the presence of newspaper reporters, respondent said he had no respect for Shorett or his restraining order, and he did not intend to comply with it.

"Respondent stated, in effect, with reference to Judge Shorett, 'He's no dumbbell but I have no respect for him when he ignores law and order; that boy is smart but I didn't fall into the trap.' He further said, 'I won't make bail for fear Shorett would forfeit it.' " Findings of fact Nos. 1, 2, 3, and 4, Re fifth item of the amended formal complaint.

"Respondent made statements from the bench that the action of the city council and mayor was silly; that because they had acted like a bunch of nincompoops was not reason why he should just sit there and dismiss cases. He remarked about the absence of the police officers and city attorney and said it was not right for officers to write citations and then not prosecute them; that perhaps he would take away the right of police officers to write citations. He referred to the temporary injunction issued out of the Superior Court and said he would not obey it; that they could not do that to him and he would be on the bench until the end of his term. . . ." Finding of fact No. 2, Re ninth item of the amended formal complaint.

The hearing panel and board further found, in light of the circumstances under which the statements were made,

that (a) the statements received widespread publication; (b) respondent knew, or should have known, the statements would receive such publication; and (c) the statements were of a derogatory, inflammatory, and offensive nature.

We are thoroughly convinced from our examination of the record that the foregoing findings meet the test laid down in *In re Little, supra*. They are supported by a clear preponderance of the evidence. We will not disturb them.

From the foregoing findings of fact, the hearing panel and board concluded that respondent's course or conduct constituted a violation of Rule for Discipline of Attorneys 1 C, J, and M, and Canon of Professional Ethics 29, RCW Vol. 0. By his third contention, respondent challenges such conclusions, basically asserting that the course of conduct ascribed by these findings does not demonstrate his unfitness to practice law.

In support of this contention, respondent argues that, under the circumstances prevailing at the time in question, the statements he made (a) correctly reflected his feelings at the time; (b) constituted justifiable criticism of the officials toward whom they were directed; and (c) were not intended by him to reflect upon the judiciary or the legal profession.

We cannot agree with respondent's contention or his arguments in support thereof. We have no serious quarrel with the right of any citizen to criticize the actions of public officials, including judges, under appropriate circumstances. Respondent, however, was not acting in his capacity as a private citizen. He was an attorney, subject to the provisions of his oath as an attorney and to the Canons of Professional Ethics. He was purporting to act in a public office which he had forfeited by operation of law. He made the statements attributed to him under notorious circumstances—circumstances which he himself had helped to generate and create. He made them under circumstances which invited publication, and the statements were in fact widely publicized. The statements were defiant, derogatory, inflammatory, and wholly unbecoming

the dignity of any responsible member of the legal profession. In part at least, the statements were directed toward and directly reflected upon impending and pending litigation, the superior court, and a judge of the superior court. The statements were neither warranted nor justified. And, whether intended by respondent or not, the statements and accompanying notoriety cast scorn and dishonor upon the judicial process, the courts, and the legal profession.

We are satisfied that respondent's statements, made under the circumstances here present, constituted a violation of his oath as an attorney, violated Canons of Professional Ethics 1 and 20,[4] RCW Vol. 0, as well as Canon 29, and demonstrated his unfitness to practice law. Such conduct merits disbarment. See *In re Sherman, supra.*

In the light of our conclusions just stated, we do not reach or decide the issues raised by the remaining charge of misconduct relating to respondent's official and unofficial conduct concerning Mrs. Betty Adams, the findings and conclusions in respect thereto, and respondent's challenge thereof.

It is ordered that respondent be, and he hereby is, disbarred from the practice of law in the state of Washington and that his name be stricken from the roll of attorneys.

[4]"It is the duty of the lawyer to maintain towards the courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges, not being wholly free to defend themselves, are peculiarly entitled to receive the support of the bar against unjust criticism and clamor. Whenever there is proper ground for serious complaint of a judicial officer, it is the right and duty of the lawyer to submit his grievances to the proper authorities. In such cases, but not otherwise, such charges should be encouraged and the person making them should be protected.

" . . .

"Newspaper publications by a lawyer as to pending or anticipated litigation may interfere with a fair trial in the courts and otherwise prejudice the due administration of justice. Generally they are to be condemned. If the extreme circumstances of a particular case justify a statement to the public, it is unprofessional to make it anonymously. An *ex parte* reference to the facts should not go beyond quotation from the records and papers on file in the court; but even in extreme cases it is better to avoid any *ex parte* statement." Canons of Professional Ethics 1 and 20, RCW Vol. 0.

OTT, C. J., DONWORTH, FINLEY, WEAVER, and HALE, JJ., concur.

HILL, J., concurs in the result.

HUNTER, J. (dissenting in part and concurring in the result)—The remarks of the respondent directed to the city officials of Seattle, the prosecuting attorney, and the superior court judge of King County are inexcusable. I believe, however, that this conduct does not in itself justify disbarment.

The respondent was not acting solely in the capacity of an attorney and officer of the court. He was also in the status of a litigant against whom process had been directed in a court proceeding. I am satisfied from the record that the respondent believed his rights as an individual and as a duly elected municipal court judge were being violated, that the city officials of Seattle and the Superior Court of King County were exceeding their jurisdictions, and that the court order obtained by the prosecuting attorney ousting the respondent from office was void and of no effect. The order of ouster was obtained after his conviction of a felonious offense and pending his appeal to this court. (The judgment of conviction was later reversed and a new trial was granted by this court. *State v. Simmons*, 59 Wn. (2d) 381, 368 P. (2d) 378.) The order entered in the quo warranto proceeding was based on RCW 9.92.120:

"The conviction of a public officer of any felony or malfeasance in office shall entail, in addition to such other penalty as may be imposed, the forfeiture of his office, and shall disqualify him from ever afterward holding any public office in this state."

It was the respondent's contention that the above statutory provision for forfeiture of his office could not become effective until the final disposition of his appeal. Although subsequent events proved that the respondent was wrong, they also established there was room for an honest difference of opinion as to his belief that the ouster order was invalid. In *State ex rel. Zempel v. Twitchell*, 59 Wn. (2d) 419, 367 P. (2d) 985, decided in January, 1962, two dissent-

ing members of this court were of the opinion that such an ouster order issued against a public officer would not be effective during the pendency of an appeal from his conviction, as it would constitute a denial of such officer's constitutional guarantee of right of review by this court.

At the time of the utterances by the respondent, for which the majority have disbarred him, there was room for him to believe that the municipal officers of Seattle and the Superior Court of King County acted without authority in vacating his office and ousting him from his position pending his appeal to the Supreme Court of this state.

In my opinion, these facts are mitigating circumstances that should be considered by this court in the imposition of punishment for the utterances respondent directed toward the municipal officers of Seattle, the prosecuting attorney, and the superior court judge of King County at the time in question.

In view of these mitigating circumstances, I believe six months' suspension from the practice of the law would be sufficient punishment to impose upon the respondent for such conduct considered independently of the other charges against the respondent.

The majority do not reach the consideration of respondent's conduct concerning Mrs. Betty Adams. The impropriety of the respondent's conduct in this regard, as a lawyer and a municipal court judge, is more serious. The out-of-court adjustment of the traffic ticket when considered with his subsequent conduct with Mrs. Adams, although it may have been short of the commission of a felony, demonstrated dishonesty and his unfitness to practice law. It is this misconduct that would justify the respondent's disbarment.

ROSELLINI, J., concurs with HUNTER, J.

December 7, 1964. Petition for rehearing denied.