## IN RE DISBARMENT OF RICHARD MANAHAN.[1]

May 6, 1932.

No. 28,796.

*Oscar G. Haugland,* for state board of law examiners.

*Burt W. Eaton, George W. Granger, William B. Richardson,* and *James T. Spillane,* for respondent.

PER CURIAM.

The charges filed against respondent were referred to Honorable Kenneth G. Brill, judge of the second judicial district, to take the evidence and make findings. The findings made regarding respondent's misconduct are based upon his own testimony and are in substance these:

[1]Reported in 242 N. W. 548.

In 1925 respondent was appointed administrator de bonis non of an estate in the probate court of Fillmore county. During his office as such he appropriated $5,500 of the moneys of the estate for his own use.

In 1928 he was employed to collect a note for $150. He collected the note and appropriated the money, telling his client that it had not been paid. More than a year and a half thereafter the client learned from the maker of the note that she had paid it. He then paid the client the whole amount with interest.

In the fall of 1930 he was retained by one Carey to represent him in a dispute Carey had with Dr. Gogstetter. A settlement was arranged wherein Carey executed certain promissory notes and a check for $700 payable to Gogstetter. Carey gave the notes and check to respondent to deliver to Gogstetter. There was some delay because of Gogstetter's insistence that the notes should be secured by chattel mortgage. Respondent's checking account at the bank was overdrawn, and, without authority from Gogstetter or Carey, respondent indorsed the check, signing Dr. Gogstetter's name, by "Richard Manahan, Atty." cashed the check, and spent the money. At no time was he Dr. Gogstetter's attorney.

In 1930 the state examiner's department claimed that the county of Olmsted had overpaid the printers $750 for county printing. The printers drew a check for $750 payable to the county and gave it to respondent, then county attorney. He advised the board of county commissioners of its receipt but indorsed the check, "County of Olmsted, by Richard Manahan," deposited the proceeds in his private account, and spent the money for his own purposes.

In May, 1929, one Kelly placed in respondent's hands a $15,000 mortgage on real estate and paid respondent $25 to be used for recording fees and registration tax. Respondent accepted the same and promised to pay the tax and record the mortgage at once. He failed to do either. Kelly wrote several letters to respondent inquiring about the matter, which respondent ignored. He still retains the mortgage and the $25. His excuse is that he wants to talk with Kelly about it.

With the exception of the last matter his defalcations have been made good by the aid of relatives and friends who have advanced some $12,000 for that purpose, $1,500 of which he has repaid during the year just past.

Respondent has practiced law for 18 years except for the time he served in the world war, where he held the rank of captain. He is nearly 43 years old, married, and has five children. In palliation of his wrongdoing it is claimed that because of financial worries a nervousness has developed which brings on a painful affliction in the form of dermatitis of the hands and feet, often bringing on secondary infection resulting in phlebitis affecting legs and arms, at times confining him to bed for days and even for several weeks. The most severe attacks were between 1927 and 1929. At this time he used intoxicating liquor heavily, suffered severe emotional upsets, and considered suicide. Respondent has been municipal judge in Rochester, and county attorney, and hence has enjoyed the esteem of the people who have known him all his life. The referee finds that respondent during all the time was fully capable of distinguishing between right and wrong and of appreciating "the consequences of his acts, except possibly during the latter part of 1929 and early part of 1930, when he was very much depressed and emotionally upset by the combination of his financial condition and his own nervous nature, resulting in a further complication in the aggravated dermatitis. His condition has been much improved since his financial worries were lessened. It appears probable, however, that if he is again subjected to serious troubles, he may suffer a similar emotional upset."

There is much in the unfortunate situation that appeals to the sympathy of the court. The fact also that there are persons who have come to his aid in such a large amount as indicated and that the foremost members of the bar of Rochester appeared before this court to plead his cause would incline us to a less drastic judgment than disbarment were it possible to reconcile our inclination with our duty. But for the honor of the profession and the protection of the public there is, in our judgment, no other course open for the court than the exclusion of an attorney from the right to practice

law who not only knowingly misappropriates moneys not belonging to him but also deliberately and wrongfully indorses checks in order to obtain the money of others. That his physical condition through inheritance or otherwise subjects him at times to suffering so painful as to affect his mind is pitiable, but does not justify the court in taking chances that, were he again permitted to practice, relapses might occur during which clients in the future would suffer as in the past.

The findings of the referee are approved and adopted, and as a conclusion it is ordered that judgment be entered disbarring the respondent, Richard Manahan, from practicing as an attorney at law in this state and that his name be stricken from the roll of attorneys.

Let judgment be entered accordingly.