[No. C. D. 2375. *En Banc.* December 11, 1952.]

*In the Matter of the Proceedings for the Disbarment of* NELSON DURHAM, *an Attorney at Law.*[1]

*A. Vernon Stoneman,* for board of governors.

*John J. Kennett,* for respondent.

OLSON, J.—This is a disciplinary proceeding involving a member of the bar. The complaint charges principally that, for more than one month, commencing about February 13, 1951, respondent gave active assistance to a certain female person in the opening and operation of a house of prostitution near the city limits of Seattle, in King county; that, acting for its operator, he arranged for its rental and loaned to her one half of the first month's rent; that he received a share of the earnings of common prostitutes

[1] Reported in 251 P. (2d) 169.

employed in that house; that he agreed to protect the operation from law enforcement action; that he notified the occupants of a pending raid on the premises, causing them to close the house for several days; that, upon his advice, it was reopened; and that it operated until finally closed by a raid by peace officers, March 17, 1951.

After an extended hearing, a trial committee of the bar made the following findings of fact in its report to the board of governors of the bar association: that respondent was admitted to practice law in this state, February 23, 1938, and practiced in Seattle until about March 30, 1951, except for periods of military service and temporary employment in Canada; that respondent was tried in the superior court for King county, July 21, 1951, upon criminal charges arising out of the transactions referred to in the complaint in this matter; that the jury found that he committed the acts charged, but that he was not guilty by reason of insanity or mental irresponsibility, and that, although he was sane and responsible at the time of trial, there was such a likelihood of a recurrence of his insane or mentally irresponsible condition that he was not a safe person to be at large. The record shows that he was committed upon this verdict, January 25, 1952.

February 7, 1952, respondent was released from custody upon a writ of *habeas corpus* granted by the superior court for King county. The court found that respondent was then sane and safe to be at large, and that there was not such a likelihood of a recurrence of his unsound mental condition as to render him unsafe to be at large in the future. An appeal in this matter is now pending in this court, but its disposition can have no effect upon our decision in this disciplinary proceeding.

The trial committee further found that respondent suffered an epileptic seizure in 1946, which was the first of such seizures; that he then began to increase gradually his consumption of alcohol and to take nembutal, a barbiturate; that he commenced medical treatment, December 20, 1949, and was then suffering from epilepsy, chronic alcoholism,

with liver damage, and psychoneurotic inadequacy; that he entered a sanitarium, March 30, 1951, for further treatment, and, while there, suffered physiological stress which, in the opinion of a psychiatrist, produced changes which make it unlikely that he will have a recurrence of his former difficulties; that he was discharged from the sanitarium, May 22, 1951, and has not used barbiturates or alcohol since that date; that he now has good judgment, understands this proceeding, and apparently has suffered no brain damage; that he would have known and understood his unlawful acts, had not his knowledge and understanding of those acts been impaired by emotional disturbances, and by the use of alcohol and barbiturates; that these substances destroy one's power to make reasonable choices as to behavior; that, in the opinion of a psychiatrist, respondent could not control his behavior during a period of several months; and that he has no memory of the period of time during which his misconduct occurred, and had inadequate rational control over his behavior during that interval.

It was the conclusion of the trial committee that respondent had engaged in the grossly improper conduct charged in the complaint in this matter, and that he

". . . had only a fragmentary awareness of reality and was without any effective power of choice during the period in question and did not possess his normal judgment nor adequate intelligent judgment to avoid wrongdoing, primarily as a result of excessive use of alcohol and barbiturates which in turn occurred by reason of emotional disturbances and epilepsy."

The committee further concluded that, at the time of the hearing, he had

". . . reasonable judgment and powers of choice and is normal and competent to engage in the practice of law, but that enough time has not yet elapsed since respondent's improvement to warrant a present determination that respondent will be able to practice law without a recurrence of his former difficulties."

The trial committee recommended, in accordance with a proposal submitted to it by respondent, that he be suspended

from the practice of law for a period of two years from February 2, 1952 (the date the hearing closed), and thereafter until he has submitted to the board of governors satisfactory evidence that he is competent to engage regularly and continuously in the practice.

This report and recommendation, together with a record of the proceedings before the trial committee, were submitted to the board of governors of the bar association. The board concurred in the findings and recommendations of the trial committee, and the matter is now before this court upon that record.

We need not extend this opinion by a statement of the details of respondent's unlawful conduct. The findings of the trial committee in this regard are supported by the evidence. It cannot be questioned that respondent committed acts involving moral turpitude and violated the ethics of the profession, either of which transgressions is a ground for disbarment or suspension. Rule for Discipline of Attorneys 10 (6) (11), 34A Wn. (2d) 183.

It also is beyond dispute that such conduct by a member of the bar brings discredit not only to himself but to the entire profession. This is particularly true where, as here, the publicity accorded to his trial upon the criminal charges was so wide and of such a sensational nature that we are obliged to take judicial notice of it.

In fact, it is apparent from the record that all persons concerned with this matter agree that some disciplinary action must be taken. While we, of course, give serious and respectful consideration to the recommendation of the trial committee and the board of governors in all disciplinary cases, we cannot escape our ultimate responsibility to determine what the final action must be in any case.

It cannot be determined now that respondent will be able to practice law at any predictable time in the future, without recurrence of his former difficulties. Whatever their cause and regardless of the circumstances disclosed by this record, which obviously are urged in mitigation, we cannot follow the recommendation of the board of governors

in this case. It may be that the practical difference between that recommendation and disbarment is slight, because of the ever-present right of one disbarred to seek reinstatement. But we do not think this respondent should be encouraged in this regard, as he might be by the recommended suspension. When and if he desires to re-enter the practice of law, his application to do so must be viewed upon the evidence then presented and the record of this proceeding. Rule for Discipline of Attorneys 46, 34A Wn. (2d) 198.

From this record, it appears to us that respondent's continued membership in the bar association will be detrimental to the integrity and standing of the bar and to the administration of justice. We cannot certify to the public that he is now worthy of trust and confidence or that he will be in the future, so that we can subscribe to an order providing merely for his suspension from the practice of law.

It is ordered that, upon the expiration of thirty days after the filing of this opinion, respondent's name shall be stricken from the roll of attorneys, and that from that date he shall not practice law in this state.

ALL CONCUR.