[No. C. D. 4687. *En Banc.* August 11, 1960.]

*In the Matter of the Disciplinary Proceedings Against* ARTHUR EBER SHERMAN, JR., *an Attorney at Law.**

*Reported in 354 P. (2d) 888.

*T. M. Royce*, for Board of Governors.

*Arthur Eber Sherman*, pro se.

*The Attorney General* and *George Neff Stevens*, amici curiae.

HILL, J.—The board of governors of the Washington State Bar Association has recommended the disbarment of Arthur Eber Sherman, Jr., for making false answers in his application for admission (by examination) to practice law in the state of Washington.

He falsely stated that he had never taken the bar examination in any other state and ignored the further question, "If so, were you successful?" He had, in fact, taken bar examinations twice in California and twice in Oregon; he had failed both times in California and once in Oregon.

Mr. Sherman was discharged from the United States Army Air Corps as a captain in 1946, with honors and decorations which included the "Distinguished Flying Cross with 2 Oak Leaf Clusters." He saw considerable service in China and in Burma. Included in his experiences was a harrowing incident, described in his own words,

". . . a plane came in and crashed, was on fire. One of our men trapped in it, couldn't get him out. He was conscious begging not to die. Col. Dunning and I had to shoot him. . . ."

He was discharged with a diagnosis of "combat fatigue."

He apparently entered the University of Michigan shortly after his discharge and was admitted to the university hospital August 28, 1946, with a left inguinal hernia. The case summary included the following:

". . . During his hospitalization the patient demonstrated very associal behavior. He was very antagonistic and lacking in desire to be friendly or cooperative.

". . .

". . . If the patient will accept psychotherapy it is felt that pyschiatric aid would be very desirable."

He was again in the university hospital in February, 1952. The case summary included the following:

" . . . The day following admission, the patient was operated upon and a small, right, indirect, inguinal hernia was found and a conventional Bassini type repair was carried out. Postoperatively, in the reaction stage from anesthesia, the patient was quite belligerent and was cursing loudly and throwing things about the ward. However, he demonstrated no other evidences of social maladjustment until the night of the fifth day, at which time he became disturbed over not getting a laxative at the moment he wanted, and he walked out the back door in his pajamas and robe and was discovered a few minutes later on the University campus. At this time, he was returned by the police, and on returning, seemed to be quite disturbed, deluded, and overtly psychotic. The following day, he was seen by a Neuro-Psychiatric consultant and his findings were as follows: He demonstrated marked hostility of a diffuse nature which did not suggest any paranoid tendency. The patient had no insight into his difficulty and also had difficulty distinguishing fact from fantasy, although he appeared to be in good contact and was oriented. He demonstrated some impairment of conceptual thinking and abstract thinking; however, his judgment was quite good. He maintained a very defiant attitude throughout the examination. The consultant felt that he was a schizophrenic of the simple type, but felt that nothing could be done about this immediately, inasmuch as the patient vehemently refused any kind of psychiatric treatment. It was suggested that he be committed to a Veterans Administration Psychiatric Hospital in Battle Creek, but this seemed impractical inasmuch as his parents were in Massachusetts and his wife in Central America. The consultant did not feel that he was excessively dangerous, inasmuch as the paranoid ideation seemed to be minimal. The patient caused no further difficulty in the ward routine and was discharged on the sixth postoperative day with the wound well healed.

" . . .

" . . .

"Recommendations: The patient should be observed for further change in his psychiatric condition and if he does become paranoid, it would seem highly advisable to carry out commitment at that time."

Because of this background of wartime experience and hospital records, our own examination of the record in this

proceeding, and the actions, reactions and attitudes of Mr. Sherman as established therefrom—plus his personal appearance before this court in this proceeding as his own attorney—we are deeply concerned with whether the need is not for psychiatric care rather than disciplinary action.

Mr. Sherman seems to recognize no great impropriety in falsifying his answers to the question concerning whether he had taken the bar examination in any other state, but justifies it on the basis that it was necessary to protect him from persecution stemming from Oregon, where he had been denied admission to the bar in 1953. We have no doubt that, in his own mind, the justification is complete and ample. We, of course, do not agree, but it seems to us to suggest a type of mental illness involving a persecution complex rather than wilful perjury.

■ Comparatively recently, and after his admission to the bar of this state, he filed two petitions for rehearing with the supreme court of Oregon and wrote a letter to a trial judge in Oregon (copies of which were mailed to other parties), all of which were contemptuous and insulting in character. He was a party to the litigation in each instance, and had appeared *pro se*. Patently, these were a violation of his oath to "maintain the respect due to the courts of justice and judicial officers," taken on his admission to the bar in his state, and of the first Canon of Professional Ethics, *i.e.*,

"The duty of the lawyer to the courts. It is the duty of the lawyer to maintain towards the courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges, not being wholly free to defend themselves, are peculiarly entitled to receive the support of the bar against unjust criticism and clamor. Whenever there is proper ground for serious complaint of a judicial officer, it is the right and duty of the lawyer to submit his grievances to the proper authorities. In such cases, but not otherwise, such charges should be encouraged and the person making them should be protected. [Adopted Nov. 22, 1950, effective Jan. 2, 1951.]" RCW Vol. 0.

■ Mr. Sherman's justification is that he was only a layman in Oregon, together with his belief that he cannot

secure justice in the courts of that state. A lawyer's obligation and the Canons of Professional Ethics do not cease to operate at the state line. Unless the statements by Mr. Sherman—derogatory to the Oregon courts and judges—are the result of mental illness, they would, in themselves, merit disbarment rather than the reprimand recommended by the board of governors.

We decline, on the present record, to disbar Mr. Sherman or to reprimand him—not because we condone his actions, but because, as heretofore indicated, we are concerned with whether he is mentally responsible for what he has done.

The logic of the situation would seem to dictate the conclusion that, if he was mentally responsible for the conduct we have outlined, he should be disbarred; and, if he was not mentally responsible, he should not be permitted to practice law.

However, the flaw in the logic is that he may have been mentally irresponsible for the falsification of his application for admission to practice law in this state in December, 1956, and in November, 1957, when he filed the objectionable petitions for rehearing with the supreme court of Oregon, and in February, 1958, when he sent his contemptuous letter to a circuit judge in Oregon, and, yet, have sufficiently improved in the almost two and one-half years intervening to be able to capably and competently represent his clients. Supporting the latter possibility is Mr. Sherman's claimed successful practice, since September, 1958, in Pacific County. We are advised of no complaint of any character made against him during that period.

Mr. Sherman has offered to have a psychiatric examination made. It is our view that this matter should be remanded to the board of governors of the Washington State Bar Association for further investigation along the lines suggested by the dissenting member of the trial committee.

We would make clear that we are satisfied that a case has been made against Mr. Sherman, warranting a refusal to permit him to further practice law in this state unless he can establish his mental irresponsibility at the

time of the offenses charged. The burden of proof is upon him.

If he establishes such mental irresponsibility; the burden is then upon him to establish his present capability to practice law.

Without in any way prejudging what the further hearings may disclose, we would suggest consideration of whether the procedure for offenses committed before admission to the bar, such as the falsification of answers to an application for admission, might not more properly be a motion to vacate the order of admission to practice rather than disbarment.

Remanded to the board of governors of the Washington State Bar Association for further investigation and action.

FINLEY, ROSELLINI, FOSTER, and HUNTER, JJ., concur.

WEAVER, C. J. (dissenting)—I dissent. I would follow the recommendation of the Washington State Bar Association.

MALLERY, DONWORTH, and OTT, JJ., concur with WEAVER, C. J.

---

[*En Banc.*    July 6, 1961.]*

PER CURIAM.—On rehearing, the court adheres to the opinion heretofore filed herein on August 11, 1960, and to the remand to the Washington State Bar Association for further investigation and action; withdrawing, however, any suggestion relative to a vacation of the order for admission to practice. We have decided to adopt the suggestion of the *amici curiae* (the Honorable John J. O'Connell, Attorney General of the State of Washington, and the Honorable George Neff Stevens, Dean of the University of Washington Law School) that we amplify and clarify our remand relative to the procedures to be followed.

The charges against Mr. Arthur Eber Sherman, Jr., and the facts in relation thereto are adequately stated in

*Reported in 363 P. (2d) 390.

the opinion filed on August 11, 1960, to which we adhere, and will not be repeated. We do, however, think it timely to state specifically what we have heretofore implied but not clearly articulated, *i.e.*, that a disciplinary proceeding is a special proceeding, neither civil nor criminal, incident to the inherent power of the court to control its officers and is *sui generis*.

, We have, concededly, had some difficulty in describing the exact nature of such proceedings, but have pointed out that they present "problems which are without complete analogy in the consideration of other legal proceedings." *In re Little* (1952), 40 Wn. (2d) 421, 430, 244 P. (2d) 255.

■ ■ A disciplinary proceeding is on each occasion an inquiry into the fitness of a member of the bar, in the light of his conduct or condition, to continue in the practice of the law. Decisions in disciplinary matters are not precedents for any other class of cases. Such a proceeding is conducted through the agency of the Washington State Bar Association in accordance with the State Bar Act (Laws of 1933, chapter 94; RCW, chapter 2.48) and the rules adopted by this court.

■ The expense of all investigations leading to the institution of such proceedings and of the proceedings themselves is carried by the Washington State Bar Association. The court is most appreciative of this and of the time and effort of individual members of the bar (as members of the Board of Governors, of local administrative committees, and of trial committees) in maintaining the high ethical standards of the profession; but we are painfully conscious that upon this court alone rests the duty and the grave responsibility of adjudging whether or not there has been professional misconduct and of taking the appropriate disciplinary action. *Burns v. Clayton* (1960), 237 S. C. 316, 117 S. E. (2d) 300. The proceeding in this court is not in the nature of an appellate review, as that term is generally understood. The responsibility of decision, in situations where the interests of both the public and the attorney (charged with misconduct) are concerned, being ours, we

would be remiss if we did not insist that the record before us be amplified by the exploration of any facet of the case which might have a bearing on the ultimate determination. In the present case, the mental competency of Mr. Sherman seems to this court both relevant and material.

We approve of and adopt the recommendation of *amici curiae*: that a determination be made in accordance with Rule for Discipline of Attorneys 7 K (2) (effective January 2, 1961) as to whether Mr. Sherman is mentally capable of conducting a proper defense at this time. If he is not, then further proceedings are to be in accordance with Rule 7 K.

If he insists that he is presently mentally competent, in spite of a defense of mental incompetence at the time of the conduct complained of, and the panel conducting the hearing does not have reasonable cause to believe that Mr. Sherman is of unsound mind to the extent that he is incapable of conducting a proper defense to the formal complaint against him, then neither Rule 7 K nor any other provision of the present Rules for Discipline of Attorneys is applicable.

Likewise, at the suggestion of *amici curiae* and for the guidance of the panel hearing this matter and also the Board of Governors, we indicate our present acceptance of the following propositions:

A. Mental irresponsibility is a complete defense to conduct of an attorney which would otherwise warrant disciplinary action: (1) if such conduct was the result or the consequence of mental incompetency; and (2) if the mental condition which was responsible for such conduct has been cured so completely that there is little or no likelihood of a recurrence of the condition. The burden of proof of this defense, in all of its aspects, is upon the respondent attorney.[1]

---

[1] In support of this rule see: *In re Durham* (1952), 41 Wn. (2d) 609, 251 P. (2d) 169; *Cane v. State Bar of California* (1939), 14 Cal. (2d) 597, 95 P. (2d) 934; *In re Breding* (1933), 188 Minn. 367, 247 N. W. 694; *In re Manahan* (1932), 186 Minn. 98, 242 N. W. 548; *In re Freedman* (1959), 7 App. Div. (2d) 447, 184 N. Y. S. (2d) 199; *In re Gould* (1957), 4 App. Div. (2d) 174, 164 N. Y. S. (2d) 48; *In re Creamer* (1954), 201 Ore. 343, 270 P. (2d) 159; *Theard v. United States* (1957) 354 U. S. 278.

B. If the respondent attorney is able to carry the burden of proof as to his mental irresponsibility at the time of the conduct of which complaint is made, but is unable to prove recovery to the extent indicated in "A" and the court has reason to believe that such recovery is possible, he will be suspended until such time as he can prove such recovery—otherwise, he shall be disbarred.[2]

With the foregoing amplification and clarification, this matter is remanded to the Board of Governors of the Washington State Bar Association for further investigation and action.

MALLERY, J. (dissenting)—The majority opinion states:

" . . . a disciplinary proceeding is a special proceeding . . . incident to the *inherent power* of the court to control its officers . . ." (Italics mine.)

There is no inherent power to disbar an attorney either in the supreme court alone or acting in conjunction with the board of governors.

In territorial days and up until 1895, "courts of record" were given authority by statute over the admission to practice and discipline of attorneys. The state constitution, adopted in 1889, by a general savings clause validated all statutes not specifically in conflict with the provisions of the constitution. Thus, there is constitutional sanction for the legislative exercise of the police power over the licensing of attorneys. In 1895 "courts of record" were divested by statute of their authority to admit and disbar attorneys, and that power was conferred upon the supreme court. The board of bar examiners was later created by statute, and finally the integrated bar, its board of governors and the present disciplinary powers and procedures were created or provided for by statute. This court now discharges the duty imposed upon it by that statute pursuant to the authority therein conferred.

---

[2]In support of this rule see: *In re Durham, supra* (note 1); *In re Chmelik* (1938), 203 Minn. 156, 280 N. W. 283; *In re Breding, supra* (note 1); *In re Freedman, supra* (note 1); *In re Dubinsky* (1938), 256 App. Div. 102, 7 N. Y. S. (2d) 387; *In re Creamer, supra* (note 1).

The bar association, its board of governors, and trial committees derive their authority directly from the statute and exercise it pursuant to the rules and procedures promulgated pursuant to statutory authorization. They are no more subject to supervision and control under the theory of *inherent power* than are the superior courts.

Disciplinary proceedings do not originate in this court, and, indeed, this court officially learns of them only upon the filing in this court of the completed record of the proceeding accompanied by the recommendation of the board of governors.

The majority opinion states:

" . . . we would be remiss if we did not insist that the record before us be amplified by the exploration of any facet of the case which might have a bearing on the ultimate determination. . . .

" . . . this matter is remanded to the Board of Governors of the Washington State Bar Association for further investigation and action."

This court has no statutory authority for following such a course. The issues in a disciplinary proceeding are framed by the pleadings of the adverse parties. It is strictly an adversary proceeding with the bar association on one side and the attorney on the other. The attorney has an unqualified right to interpose proper defenses of his own choosing so long as they are not conflicting. It is not the prerogative of the bar association to elect his defense for him, to conduct it, go forward with the proof of it, or control it in any way. Specifically, no attorney can be compelled to defend on the ground of insanity or incompetence. The attorney's right to elect and conduct his own defense carries with it the concomitant duty of carrying the burden of it.

There is a line of demarcation between the exercise of *supervisory powers* over the board of governors on the part of this court and *the review* of the record at the request of an attorney who claims a proper defense was wrongfully excluded. We should not supervise the board of governors by directing it to "investigate" and "explore" facets of the case which we deem might have a bearing on it, notwith-

standing it would be proper to remand with directions to admit a defense if we find it was wrongfully excluded.

I would adopt the recommendation of the board of governors.

I dissent.

OTT, J., concurs with MALLERY, J.