[No. C.D. 5105.   En Banc.   October 9, 1980.]

*In the Matter of the Disciplinary Proceeding Against* STANLEY B. ALLPER, *an Attorney at Law.*

*Leland G. Ripley,* for Bar Association.

WRIGHT, J.—This is an attorney disciplinary proceeding referred to the court pursuant to Discipline Rule for Attorneys (DRA) 5.6(h) on a recommendation that respondent Stanley B. Allper be disbarred for mishandling clients' funds. We also shall determine if Allper should be held in

contempt of court for failure to observe the suspension from practice order of this court dated November 17, 1978. That order resulted from his noncompliance with Continuing Legal Education (CLE) requirements for 1977 under Admission to Practice Rule (APR) 11.

I

The central question is: Should Allper be disbarred? We adopt the recommendation of the Disciplinary Board (board) of the Washington State Bar Association (bar) and, accordingly, order disbarment.

On June 27, 1979, a complaint was filed by the bar charging respondent Allper with unfitness to practice law as a result of an alleged mishandling of a client's funds, neglect of another client's affairs and his previous disciplinary record. Prior discipline included: (1) censure for conduct prejudicial to the administration of justice and neglect of a legal matter (June 6, 1975); (2) censure for neglect of a legal matter, placing himself in a conflict of interest situation and failing to cooperate in a disciplinary investigation (August 29, 1977); (3) reprimand for neglect of a legal matter and intentional failure to carry out a contract of employment (August 11, 1978).

Allper filed an answer July 20, 1979, and a hearing was set for August 17, 1979. At Allper's request the hearing was postponed until September 28, 1979. His September 24, 1979, request for another continuance was denied. He was notified of the hearing and was under subpoena but did not appear personally or by counsel. He has not filed a brief contesting the board's findings, conclusions and recommendations.

The findings of the hearing board officer (hearing officer) adopted by the board indicate that in August 1975, Allper was employed by Robert and Ann Neal, who were selling a residence, to act as closing attorney in the transaction. Because of potential disputes over a real estate commission, the sellers' closing statement provided that $2,520 was "to

be retained in escrow until instructed by the sellers to disburse." On September 2, 1975, Allper received $16,451.79 from the purchaser which he deposited into his account. He subsequently closed the transaction, disbursing necessary funds from the account.

Following the closing, the Neals were sued by one Sheehan, who claimed that the Neals should have sold the residence to him. Allper successfully defended the Neals and a judgment was entered in May 1977. During the handling of the real estate closing and the lawsuit, respondent earned substantial fees, but the amount was not determined, nor paid.

In May 1977, Allper advised Robert Neal that the $2,520 should be left in his attorney trust account because the realtor might sue for a commission. Neal met with Allper September 22, 1978, and urged that Allper state the fees due and that a settlement be made. Respondent, however, claimed that some of his records had been stolen, making it difficult to determine the time spent on the Neals' behalf. There was a discussion to the effect that Allper should pay Neal interest because of the delay, but Neal did not intend to give Allper authority to use the trust funds for his own purposes.

After the September 22, 1978, meeting, Neal attempted several times to contact Allper and obtain a settlement. Allper repeatedly promised immediate resolution and payment, which was not forthcoming.

Allper forwarded a letter to Neal January 31, 1979, stating that the amount owing for services was $1,530 and indicating that payment of the account balance would be made upon receipt of a save harmless agreement. Neal refused to agree to the propriety of the fee but nonetheless furnished the save harmless agreement. The dispute concerning fees has continued and was unresolved at the time of the hearing.

The hearing officer further found that Allper failed to maintain funds equal to the unpaid $2,520 in his trust account and that on a number of occasions in 1976, 1977

and 1978, trust checks in smaller amounts were returned by the bank "NSF". On January 31, 1979, the trust account had a zero balance and was closed. Allper has not paid the money due the Neals.

The hearing officer and the board concluded that Allper's conduct in handling the Neal funds violates (CPR) DR 9–102(A) and (B). They also concluded that Allper's delay in signing and returning a notice of substitution and withdrawal constitutes a technical violation of (CPR) DR 2–110(B)(4), which requires a lawyer to withdraw from employment when discharged by a client.

Based upon his conclusion that Allper mishandled the Neals' funds and that respondent's disciplinary record indicated a general unfitness to practice law, the hearing officer recommended a 1–year suspension.

At its November 16, 1979, meeting, the board unanimously adopted the findings of the hearing officer. However, the board modified the conclusion regarding the accumulation of discipline to provide that Allper's prior disciplinary record, including the conduct giving rise to a 90–day suspension recommendation already before the court, and the conduct involved in the instant proceeding, "constitutes a general unfitness to practice law as proscribed by (CPR) DR 1–102(A)(6), and warrants disbarment." The board unanimously recommended disbarment, both for nonretention of the Neal funds in his trust account and for his general unfitness evidenced by the cumulative discipline.

The earlier disciplinary action resulting in the 90–day suspension recommendation was initiated by a 3–count complaint filed by the bar. Count 1 alleged that Allper had given false testimony under oath and filed a false affidavit with the bar; count 2 alleged the mishandling of clients' funds; count 3 alleged unfitness to practice law.

After a disciplinary hearing, the hearing officer found no misconduct under count 1. As to count 3, he concluded that the earlier disciplinary sanctions against Allper together with the instant action did not show unfitness to practice

law. The hearing officer concluded with reference to count 2 that Allper used funds belonging to four clients, failed to promptly pay and account to said clients and commingled the clients' funds with his own, contrary to DRA 1.1(c) and (i), and (CPR) DR 9–102(A) and (B) of the Code of Professional Responsibility. These conclusions were based on Allper's handling of the funds of Lyn Foster, Paul Beckman, Fidelity Finance and the Metropolitan Health Club.

In June 1977, Allper began collecting rent for Foster. He properly received and deposited in his attorney trust account the June payment of $75 and remitted $50 to Foster, her two–thirds share. In July 1977, however, he failed to deposit the second payment, a check for the $200 balance due. Allper nevertheless wrote a trust account check to Foster for her $133.33 share of the $200, which was returned for insufficient funds.

On August 12, 1977, Allper wrote to himself and cashed a $375 trust account check to transfer funds to himself. His trust account records on that day showed an insufficient balance to cover the check, which was returned for insufficient funds.

Allper deposited $707.75 in the trust account August 23, 1977, which sum included $173.75 received for client Beckman. Beckman's funds were not delivered to him until after December 23, 1977. From the $707.75 deposit, the bad checks previously written to respondent and Foster were renegotiated and covered.

Respondent received and deposited $264 August 23, 1977. His August 25, 1977, check to Fidelity Finance in the amount of $148.17, the client's two–thirds share, was dishonored because of insufficient funds on both September 14, 1977, and September 29, 1977. Fidelity received a money order from Allper remitting the funds in early 1978. In addition, on October 16, 1977, Allper received $176 for Fidelity Finance. The next day he wrote a trust account check for his client's share which was returned twice for insufficient funds. In early 1978, Allper purchased a money order and remitted the funds.

Finally, on September 12, 1977, Allper received a $250 check made out only to himself on account due Metropolitan Health Club and for which Allper had brought collection proceedings. These funds were never deposited in the trust account. On the same day, Allper wrote a $166.67 trust account check to the health club, which was returned for insufficient funds September 23, October 11 and October 26.

As of the date of the discipline hearing, September 25, 1978, the health club check had not been paid despite an action and judgment against Allper for the funds. At the hearing Allper testified that he did not pay the judgment because he disagreed with collection tactics of a health club attorney but that he now believed he had been wrong and would pay. Allper satisfied the obligation before entry of the findings.

In his recommendations, the hearing officer reasoned that disbarment would be inappropriate if there was a rationale for a less severe sanction. He found that rationale in the general satisfaction of Allper's clients and in Allper's conduct, which "does not demonstrate a pattern of intent to deceive or deprive individuals of their rightful funds. The pattern, if any, is one of confusion and inaction." Consequently, the hearing officer recommended a 1–year suspension to be deferred for 2 years. During that 2 years respondent was to be required to submit quarterly accountings showing the activity and status of his trust account.

The board unanimously adopted the modified findings and conclusions of the hearing officer. A majority, however, favored an actual 90–day suspension and quarterly accountings of his attorney trust account for a period of 1 year following the end of the suspension. The board also assessed $1,250 in costs against Allper.

Following the May 14, 1979, oral arguments on the 90–day suspension recommendation, the bar received additional information concerning Allper's alleged practice of law while suspended. Consequently, the Chief Justice

remanded the Allper matter to the bar September 19, 1979, for further appropriate proceedings.

In the proceedings for mishandling clients' funds, the board concluded that Allper violated DRA 1.1(c) and (i) and (CPR) DR 9–102(A) and (B). The applicable provisions of DRA 1.1 provide that an attorney may be subjected to disciplinary sanctions for violation of his oath or duties, or for violation of the Code of Professional Responsibility. (CPR) DR 9–102(A), a code provision, requires a lawyer to deposit noncost and nonexpense client funds in an identifiable bank account (attorney at law trust account), including funds belonging in part to the client and in part to the lawyer. (CPR) DR 9–102(B) requires a lawyer to promptly notify a client of the receipt of that client's funds, to maintain complete records of and account for the funds, and to promptly pay those funds to the client as requested.

Allper cited numerous cases in arguing that suspension would be unwarranted, but this court has stressed that disciplinary action is determined by the facts and circumstances of each case. *In re Kumbera,* 91 Wn.2d 401, 404, 588 P.2d 1167 (1979); *In re Greiner,* 61 Wn.2d 306, 309, 378 P.2d 456 (1963). The court also has stated, however, that "[w]hen lawyers use clients' funds for their own personal use, mishandle trust funds, and fail to account and deliver trust funds as requested, disbarment is the usual result." *In re Kumbera, supra* at 403; *In re Batali,* 85 Wn.2d 246, 251–52, 533 P.2d 843 (1975); *In re Deschane,* 84 Wn.2d 514, 516–17, 527 P.2d 683 (1974).

In determining the appropriate disciplinary action, the court considers: (1) the seriousness and circumstances of the offense; (2) avoidance of repetition; (3) deterrent effect upon others; (4) maintenance of respect for the honor and dignity of the legal profession; and (5) assurance that those who seek legal services will be insulated from unprofessional conduct. *In re Kumbera, supra* at 404; *In re Caplinger,* 89 Wn.2d 828, 837, 576 P.2d 48 (1978); *In re Smith,* 83 Wn.2d 659, 663, 521 P.2d 212 (1974).

■ Turning to the first factor, the seriousness and circumstances of the offense, the board found in the earlier proceeding that at times there were insufficient funds in the trust account to cover the amounts Allper owed clients and that trust account checks were routinely dishonored during a period of several months. The board also found that one client, Metropolitan Health Club, had to sue Allper and obtain a judgment to recover the sum owed. Even then, Allper did not make payment until well after the disciplinary action had been filed and after the hearing on the charges. The board further concluded that Allper used funds belonging to the four clients, and commingled their funds with his own, all in violation of (CPR) DR 9–102. In the more recent proceeding, the board found that Allper failed to maintain the $2,520 involved in his trust account and had never paid the money due the Neals, again in violation of (CPR) DR 9–102. These offenses justify disbarment.

Disbarment also is necessary to ensure that Allper will not repeat the offense in light of his record of neglect, which includes two censures and a reprimand.

Disbarment may deter other attorneys from carelessly handling even relatively small amounts of money. This court has stated that public confidence in the bar "demands that lawyers preserve the integrity of entrusted funds and that lawyers promptly, accurately and fully account for such funds." *In re Deschane, supra* at 516. In the present case, Allper mishandled the funds of five clients. Though the amounts involved usually were relatively small, Allper's neglect prompted loss of confidence in the profession. Disbarment is in order to help maintain public respect, as well as to assure clients that neglect by attorneys in handling clients' funds is not tolerated.

■ The next step in the analysis is determining if mitigating factors make a sanction less than disbarment appropriate. Factors considered include: (1) the attorney's motive and purpose; (2) lack of serious consequences; (3)

attitude toward the proceeding; (4) experience and training; (5) general characteristics and nature; (6) previous good record; and (7) the probability of future transgression. *In re Little,* 40 Wn.2d 421, 430, 244 P.2d 255 (1952).

Allper's motives and purpose arguably suggest that a penalty less severe than disbarment is proper; following the first hearing the board found that he did not intend to deceive or deprive individuals of their funds. Allper was extremely careless, however. And his attempted justification for not repaying the Metropolitan Health Club funds (he didn't like the attorney's collection tactics) is disgusting and is absolutely no excuse for failure to promptly pay that client. Despite the numerous assurances of forthcoming payment that Allper made to the Neals, they never received their money. Thus it is clear that a severe sanction is in order.

Allper further stresses that only small amounts of money were involved and that these have been restored. This is not true as to the Neals. Moreover, the numerous breaches of responsibility to five clients over an extended period make the violation more serious, as does the unpardonable, extraordinarily long delay in paying the Metropolitan Health Club.

Respondent's previous record is not a mitigating factor though he claims that "no loss or damage to clients or to the public has ever occurred." Procrastination and neglect harm clients and Allper's record weighs in favor of a weighty sanction.

In *In re Kumbera, supra,* a majority of this court imposed a sanction less than disbarment because it found certain mitigating factors present. The court stated, at page 405, that where a respondent demonstrates

> a willingness to rectify the damage caused by the misconduct, contrition, inexperience, [or] temporary mental aberrations for which the respondent has sought treatment, and restitution prior to the filing of a grievance,
> . . .

the court may determine that a less severe degree of discipline will best satisfy the public interest. None of these factors are present in the instant proceeding.

The court also listed, at page 405, factors justifying more severe discipline, including lack of remorse, failure to cooperate with an authorized investigation, failure to voluntarily make restitution to those injured, failure to acknowledge and recognize the seriousness of the violation and breach of trust, and a record of prior discipline demonstrating a pattern of conduct resistant to efforts at rehabilitation. All of these factors are present in the instant case.

Allper failed to answer the more recent complaint and did not appear at the September 28, 1979, disciplinary hearing although he was under subpoena. He did not file a brief regarding the more recent findings, nor did he appear at the February 25, 1980, oral argument before this court. Restitution was not made to the Metropolitan Health Club before the earlier complaint and hearing, and Allper had not paid the Neals at the time of the more recent hearing. His past assurances that there would not be any more trust account violations (Brief for Respondent at 13) apparently were made with full knowledge that there had been another violation of trust account rules. The flagrant disregard of the suspension order as described later in this opinion also demonstrates conduct resistant to rehabilitation.

Disbarment is required because of Allper's record and the serious breach of ethics established in the instant case. The board's conclusion that Allper is generally unfit to practice law is well supported. It is bolstered by the fact that he ignored the suspension order.

## II

Allper asserts that the procedure in the earlier hearing violated equal protection and due process because of the inclusion in the formal complaint of a count specifying prior disciplinary measures. Under DRA 3.1(b)(1), past disciplinary proceedings and complaints are made a separate count "if they indicate conduct demonstrating unfitness to

practice law." This procedure was followed here. See count 3. If the prior record is not a separate count, it instead "shall be made a part of the record prior to the recommendations of the Hearing Panel to the Board." DRA 3.1(b)(2).

When Allper asserted his constitutional rights below, the hearing officer correctly ruled that the Discipline Rules for Attorneys required the allegations of prior discipline. The officer admitted as evidence copies of two letters of censure and the reprimand.

■ Because Allper has not argued or cited legal authority for his equal protection claim, it shall not be considered. *State ex rel. Schwab v. State Bar Ass'n*, 80 Wn.2d 266, 268, 493 P.2d 1237 (1972); *DeHeer v. Seattle Post–Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

■■ Allper's due process · argument is that the disciplinary record should not be admitted as evidence until after factual allegations of the complaint are decided. He characterizes disciplinary proceedings as quasi–criminal and analogizes to prohibitions on placing habitual criminal charges before the jury and using past drunk driving convictions on the issue of guilt or innocence. Contrary to his argument, however, *In re Little, supra,* and subsequent cases establish that disciplinary proceedings are not criminal actions; they are *sui generis* or peculiar to themselves. *In re Simmons*, 65 Wn.2d 88, 94, 395 P.2d 1013 (1964); *In re Sherman*, 58 Wn.2d 1, 8, 354 P.2d 888 (1960). Thus, Allper's analogy fails because due process requirements in these special proceedings may differ from those in the criminal context.

As the bar points out, *ABA Standards for Lawyer Discipline and Disability Proceedings* (Approved Draft, 1979) provide that one's prior disciplinary record "normally should not be divulged to a hearing committee until after there has been a finding of misconduct in the present matter." Section 8.39, at 65. The commentary, however, states at page 65 that evidence of prior discipline necessary to prove the present charges may be offered. Since the evidence of prior discipline was necessary to prove count 3,

unfitness to practice law, under the ABA standards the information could be divulged to the hearing officer. We hold that the procedure utilized did not violate due process.

Allper's final argument relating to the earlier disciplinary hearing is that the hearing officer erred in granting the motion to strike and purge from the record Allper's memorandum regarding conduct of bar counsel. That memorandum makes wholly unwarranted allegations concerning the ethical and trial conduct of bar counsel Leland Ripley. Ripley successfully sought to have the memorandum stricken on the grounds its contents are irrelevant, potentially harmful to his own reputation and to the disciplinary process, and without merit.

Following the hearing and at Ripley's request, an investigation of Allper's informal complaint was conducted. The board agreed with the investigator's conclusion that Ripley had not acted improperly. Accordingly, it dismissed the complaint. Because Allper's allegations against Ripley are absolutely groundless, the hearing officer's order striking the memorandum was correct. Inclusion of the same allegations in Allper's brief, however, circumvents the protections provided by the purge order. Therefore, in response to the bar's motion we shall delete the portions of Allper's brief relating to Ripley's alleged misconduct.

## III

The final question is: Should Allper be held in contempt of court for failing to observe this court's suspension of practice order?

Allper was first contacted by the Washington State Board of Continuing Legal Education regarding his failure to file an affidavit of attendance at approved CLE activities for 1977 on March 21, 1978. Because he did not file an affidavit in response to that letter and a May 4, 1978, letter, his name was submitted to this court June 9, 1978, as an attorney who had failed to comply with the 1977 requirements under APR 11. Allper still did not take action even though a 30-day continuance was provided by the court

and the CLE board again had urged compliance in an August 15, 1978, letter. Consequently, the then Chief Justice entered a notation order November 17, 1978, suspending Allper from the practice of law for failure to comply with the rule. *See* APR 11.6(b)(1).

Allper received a letter notifying him of that suspension December 4, 1978. Two days later he wrote to this court asking that the order be held in abeyance until he could comply with the CLE requirement. The executive secretary of the CLE board, John J. Michalik, responded to Allper's letter to the court December 8, 1978. He stated that the board could not recommend reinstatement to active status until Allper submitted an affidavit constituting documentation of compliance with CLE requirements under APR 11 for calendar year 1977. A December 13, 1978, letter from Supreme Court Clerk John J. Champagne stated, "Absent any recommendation by the Board of Continuing Legal Education, the Order of Suspension must remain in effect."

In a December 28, 1978, letter to the bar, Allper explained why he had not complied with the CLE requirement. He cited time pressure resulting from: (1) his recent marriage and consequent assumption of responsibility for six stepchildren; (2) the seizure of his office by the Internal Revenue Service; (3) the necessity of personally performing office management tasks because of poor staffing; (4) the burglary and vandalization of his office, which involved destruction of equipment, ransacked files and theft of time utilization and accounts receivable records; (5) the necessity of defending himself in the instant (earlier) disciplinary action; (6) improvements to his office followed by a move to another office; (7) major illnesses requiring hospitalization of two stepchildren and his father. Allper also emphasized that the demands of a single-person practice often precluded attendance at Friday CLE seminars. He concluded the letter by requesting a program allowing him to continue practicing law while fulfilling the CLE requirement.

On January 8, 1979, Allper requested by letter that the suspension order be vacated. Supreme Court Clerk Champagne again responded that the court would not act until the CLE board made a recommendation.

On January 15, 1979, the bar mailed a motion for an order requiring Allper to show cause why he should not be held in contempt for practicing law while suspended. On January 23, the court issued an order to show cause to Allper returnable January 30. Allper mailed a motion to vacate the order of suspension January 24, which also was set for January 30 hearing.

On February 5, 1979, this court entered an order requiring the bar to hold a fact–finding hearing as to the allegations that Allper had been practicing law in violation of the suspension order. Allper's affidavit indicating attendance at 16 hours of CLE activities was received February 21, 1979. Action on his petition for reinstatement was deferred pending receipt of the findings regarding the practice while under suspension and to allow consideration of all Allper matters at one time.

Stipulated findings of fact concerning his unauthorized practice were received March 20, 1979. On May 14, 1979, this court heard oral argument regarding the stipulated facts. The court took the matter under advisement. On September 19, 1979, the court ordered the bar to hold further proceedings regarding Allper's practice of law while under suspension. An additional fact–finding hearing was held January 15, 1980.

Allper was personally served with a notice of the new allegations and a notice to answer. He was notified in writing of the time, date and place of the hearing. He did not, however, file an answer or appear personally or by counsel at the hearing. The Board of Governors approved the additional findings of fact February 15, 1980.[1]

---

[1]The bar referred the second set of findings concerning the practice of law while under suspension to the Board of Governors rather than to the Disciplinary

Both the earlier and the later findings conclusively show that Allper engaged in the practice of law in disregard of the court's suspension order.

On December 5, 1978, the day after he received notice of the suspension order, Allper appeared as the attorney for appellants D. Summers and Jennie A. Summers in the Court of Appeals at a settlement conference. Cause No. 7010–I. On the same day, he appeared as attorney for Raymond R. Lorenzen in King County cause No. D–44373 and obtained Judge Lloyd Bever's signature on an order setting the case for January 17, 1979, hearing. He also wrote to Beverly Smith, communicating a settlement offer which he advised her to reject.

On December 11, 1978, Allper wrote to Jane Rummel of United Pacific/Reliance Insurance Companies stating that he would advise his client to bring suit if the matter could not be resolved promptly. Two days later, respondent wrote a letter to his client Kathleen Myers on his attorney letterhead. The next day, he caused an answer to the amended complaint, affirmative defenses and counterclaim against plaintiff to be served upon plaintiff's attorney in Wildy v. Summers, King County cause No. 852596.

Allper signed, on December 18, 1978, a statement with reference to verbatim report of proceedings in Wildy v. Summers. Respondent caused this document to be filed with the Court of Appeals December 19. On the same day the statement was filed, Allper wrote to the court reporter on his attorney letterhead placing an order on behalf of clients Summers for the verbatim report of proceedings.

Allper received a letter from opposing counsel on behalf of his client Kathleen Myers December 20, 1978. On

Board. This was done to ensure impartial consideration of the issue. The Disciplinary Board already had reviewed and acted upon the earlier findings pertaining to practice while under suspension and two sets of findings concerning mishandling of trust funds by Allper. Consequently, the bar believed that the Board of Governors—instead of the Disciplinary Board—should act on the later findings concerning practice while under suspension. We express no opinion as to the propriety of this procedure.

December 21, 1978, Allper signed and mailed a notice of special appearance in Seattle District Court on behalf of Cheri Ann Yonich (Seattle District Court cause No. 44200). He also received, as attorney for defendants George and Jane Doe Kenney, and Sound Homes, Inc., service of plaintiff's motions for summary judgment and default in Mac-Neill v. England, King County cause No. 855389.

On December 22, 1978, Allper wrote to his clients in the MacNeill case, informing them of the summary judgment motion and reminding them he must be paid a retainer. In addition, Allper signed, as attorney for defendant in Lorenzen, a request for production of documents directed to the Washington State Department of Social and Health Services. The request, mailed the same day, was returnable January 11, 1979, at 10 a.m. at Allper's office. Also on December 22, 1978, Allper signed, as attorney for defendant in King County cause No. D–44373, a request for production of documents directed to plaintiff Marilyn A. Lorenzen. The request was mailed the same day and was returnable January 11, 1979, at 11 a.m. at Allper's office. Finally, Allper signed interrogatories to plaintiff Marilyn A. Lorenzen which were mailed the next day, December 23.

On December 26, 1978, Allper caused his notice of appearance in MacNeill to be filed with the King County Superior Court clerk. On the same day, he filed, on behalf of Cheri Ann Yonich, a petition for bankruptcy in the United States District Court for the Western District of Washington (cause No. B78–1892S), along with a statement regarding his attorney fee. In addition, Allper wrote to Beverly Smith, advising her to accept a settlement offered by Jane Rummel, and to Kathleen Myers, asking her to respond to the December 20, 1978, letter so that he could advise opposing counsel.

The next day, on December 27, 1978, Allper had both telephone and office conferences with Janet Van Pelt regarding her marriage dissolution. On December 28, 1978, he wrote a letter and prepared joint custody guidelines on behalf of Ms. Van Pelt. Allper also wrote Jane Rummel

advising that Ms. Smith had accepted the settlement offer and to the clerk of the Court of Appeals, Division One, on his attorney letterhead, regarding Wildy v. Summers, cause No. 7010–I. The letter was filed December 29, 1978.

Allper had a telephone conference with Janet Van Pelt December 29, 1978. On January 1, 1979, Allper sent a bill to Beverly Smith on his letterhead. The following day, he signed an affidavit in MacNeill stating, "I am attorney of record for the defendants . . .", filed January 3, 1979. He also wrote a letter to another lawyer, Janice Whitley, on attorney letterhead.

Allper appeared January 4, 1979, before Judge John Ritchie as attorney for the plaintiff in Canale v. Leonard Thermal, Seattle District Court cause No. 46713. He did not inform the court of his suspension from practice. In addition, he wrote to opposing counsel and accepted their offer on behalf of his client Kathleen Myers.

On January 8, 1979, Allper wrote to Beverly Smith regarding settlement of the damages arising out of her automobile accident and requesting payment of his contingency fee. He had a phone conference with Janet Van Pelt January 13, 1979. An office meeting with Van Pelt January 22, 1979, was followed by a January 23, 1979, telephone conference with the attorney representing her husband. Also on January 23, 1979, Allper conferred with Beverly Smith regarding her marriage dissolution. The order of show cause was issued the same day. It was followed by Allper's January 24, 1979, telephone conference with Ms. Van Pelt.

One day after the January 30, 1979, hearing on the order to show cause, Allper wrote to Colonel R. D. Neal on his attorney letterhead. Subsequently, he prepared a property settlement agreement on behalf of Ms. Van Pelt (February 6, 1979) and conferred with her by telephone (February 9, 1979).

On February 16, 1979, Allper had a telephone conversation with Rosann Mathis regarding settlement of her dissolution action. In a February 20, 1979, letter to Ms. Mathis

he stated, "Please call me with your thoughts . . . and hopefully the whole thing can be settled." On February 28, 1979, Allper received, as attorney for Janet Van Pelt, a motion for early trial date and note for motion docket.

He mailed two letters to Ms. Van Pelt March 19, 1979. The first stated that he had been suspended and that she should contact another attorney. The second said that another attorney had taken over his practice. Allper also sent Kathleen Myers a notice of suspension letter required by DRA 6.7. The next day, March 20, 1979, Allper had a telephone conference with Ms. Van Pelt and wrote a letter on her behalf.

Allper sent a letter to Kathleen Myers March 30, 1979, enclosing an order for her signature. The cover letter said: "If there is anything in the order which you do not understand or to which you do not agree, please call me." Ms. Myers returned the order but it was not forwarded to opposing counsel and entered until July 1979, when Ms. Myers finally contacted opposing counsel on her own.

On April 1, 1979, Allper sent Kathleen Myers a bill for professional services which stated: "Professional Services Billed during 1979 to date have been Rendered Under the Auspices of [the other attorney]." On or about the same date, he sent Ms. Van Pelt a bill for professional services which said: "Professional services billed during 1979 to Date have been Rendered Under the Auspices of [the other attorney]." Ms. Van Pelt had neither contacted nor consented to be represented by the other attorney. Allper signed a withdrawal and substitution in Ms. Van Pelt's dissolution action May 2, 1979.

█ The facts decisively show that Allper engaged in the practice of law in violation of this court's suspension order and the Discipline Rules for Attorneys. He appeared in court, prepared and signed legal documents, conferred with clients and advised clients in writing.

On February 5, 1979, the court ordered Allper to "forthwith and without delay comply with all of the provisions of DRA 6.7(a), (b), (c), (d), and (g)." DRA 6.7(a) provides:

> A disbarred attorney, or one who is suspended for longer than 60 days, shall *promptly notify* by registered or certified mail . . . all clients being represented in pending matters, other than litigation or administrative proceedings, of his . . . suspension and . . . consequent inability to act as an attorney after the effective date of his . . . suspension and shall advise said clients to seek legal advice elsewhere.

(Italics ours.) DRA 6.7(b) requires prompt notice from a disbarred or suspended attorney to clients involved in pending litigation or administrative proceedings and attorneys for each adverse party. The notice

> shall advise the prompt substitution of another attorney or attorneys in his or her place. In the event the client does not obtain substitute counsel before the effective date of the disbarment or suspension, it shall be the responsibility of the disbarred or suspended attorney to move . . . for leave to withdraw.

Despite the rule's "prompt notice" requirements and the court's order requiring compliance "forthwith and without delay," Allper waited until March 19, 1979—6 weeks after the court's second order and 3 1/2 months after he received notice of the suspension—to mail letters to some clients notifying them of his suspension. He completely failed to notify Barbara Price and Melvyn Bergquist. While Allper had the responsibility under DRA 6.7(b) to move for leave to withdraw in Ms. Van Pelt's dissolution action, he evidently took no action until May 2, 1979, when he signed the withdrawal and substitution.

DRA 1.1 provides:

> An attorney at law may be subjected to the disciplinary sanctions or actions set forth in Rule 1.2 for any of the following causes . . .
>
> . . .
>
> **(b)** Willful disobedience or violation of a court order directing him or her to do or cease doing an act which he or she ought in good faith to do or forbear.

Allper violated DRA 1.1(b) by disregarding the suspension order and the subsequent order requiring prompt compliance with DRA 6.7. *See also* RCW 2.48.180. His behavior

strengthens our conviction that disbarment is not merely warranted, it is absolutely required. Furthermore, we find Allper in contempt of court and reprimand him for his irresponsible actions.

On August 8, 1979, Allper sent a letter to his clients stating that "no files can be surrendered while there is an unpaid balance on your account." He subsequently was served with the bar's application for an order appointing a custodian of clients' files of a suspended attorney pursuant to rule 4.4 of the Discipline Rules for Attorneys.[2] On November 2, 1979, the Acting Presiding Judge of King County Superior Court signed an order appointing an attorney as custodian of Allper's clients' files. The order stated that Allper had failed to meet the requirements of DRA 6.7 and that the appointment would allow an inventory of the files and appropriate action to protect the interests of Allper's clients.

The notice of allegations sent to Allper concerning the more recent charges of practice while under suspension and his noncompliance with DRA 6.7 stated that the bar would expend $400 in file storage charges, along with file transportation costs and counsel fees in amounts to be determined at the hearing. The evidence produced at the January 15, 1980, hearing shows that the bar expended $400 in file storage, $397.67 in file transportation costs and $295 counsel's fees, for a total of $1,092.67, as a consequence of the order appointing a custodian.

---

[2] DRA 4.4 reads in part:

"(a) **Procedure.** Whenever an attorney has been transferred to inactive status because of incapacity or disability, . . . or is suspended or disbarred and fails to carry out the obligations under Rule 6.7 within 10 days of the date of such order disbarring or suspending such attorney, and no partner, personal representative or other responsible party capable of conducting the attorney's affairs is known to exist, the Presiding Judge of the appropriate Superior Court, upon application of the Association and proper proof of the facts, shall appoint an attorney or attorneys to take possession of the files and records of such attorney, inventory them, and to take such action as seems indicated to protect the interests of the clients of said attorney or as required under Rule 6.7, including but not limited to assuming control of the trust account of such attorney."

Respondent is disbarred from the practice of law. We further hold that he is in contempt of court for ignoring the suspension order and the subsequent order requiring prompt compliance with DRA 6.7. We sternly reprimand him for these irresponsible actions. Were it not for the disbarment, we would impose sanctions more severe than reprimand for the contempt.

Costs in the amount of $2,342.67 are assessed against Allper, the sum to be paid to the bar; $1,250 of that amount is attributable to proceedings stemming from the earlier complaint regarding the mishandling of clients' funds. The remaining $1,092.67 is reimbursement to the bar for expenses arising from the order appointing a custodian of Allper's files.

The clerk of this court is directed to strike the allegations concerning the ethical and trial conduct of bar counsel Leland Ripley from Allper's brief. The clerk is also directed to strike the name of respondent, Stanley B. Allper, from the roll of attorneys.

UTTER, C.J., and ROSELLINI, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

ROSELLINI, J. (concurring)—I concur in the majority opinion and I cannot agree with the suggestion made in Justice Stafford's concurring opinion that this case is disposed of in a manner inconsistent with *In re Salvesen,* 94 Wn.2d 73, 614 P.2d 1264 (1980).

A most casual reading of the majority opinions in this case and in *In re Salvesen* reveals numerous dissimilarities which justify different results. Among others, these differences are:

1. Prior to disbarment proceedings in this case, Mr. Allper had been censured by the bar on two occasions and reprimanded on one. By contrast, Mr. Salvesen had never been previously disciplined.

2. Mr. Allper was uncooperative with the bar during the proceedings even to the extent of failing to appear at a

hearing to which he had been subpoenaed. Mr. Salvesen was completely cooperative in all phases of the bar's investigation of his conduct.

3. Mr. Allper ignored an order of suspension, continued to practice law, and was found in contempt by this court.

4. One of his clients was forced to sue Mr. Allper in order to recover money to which the client was entitled. Allper repaid the amount due under the judgment only after disciplinary proceedings were started. Moreover, Mr. Allper never did repay one of his clients. By contrast, none of Mr. Salvesen's clients suffered any monetary loss.

5. Unlike Mr. Salvesen, Mr. Allper never showed any remorse for his conduct nor did he ever acknowledge the seriousness of the allegations.

6. Mr. Allper resisted efforts at rehabilitation and continued his improper conduct right up to the time of the hearing in this court. Mr. Salvesen, on the other hand, was not suspended from the practice of law pending disciplinary proceedings, and successfully conducted his law business to the satisfaction of the bar association during that interim.

All of these factors led the majority in *Salvesen* to conclude that there was a significant likelihood that the respondent would be rehabilitated. There is no similar prospect here.

UTTER, C.J., and DOLLIVER and WILLIAMS, JJ., concur with ROSELLINI, J.

STAFFORD, J.—I concur. Nevertheless, I am compelled to comment on the obviously inconsistent position taken by members of the majority in this case and the position which most of them took in *In re Salvesen,* 94 Wn.2d 73, 614 P.2d 1264 (1980). Except for Allper's lack of cooperation with the bar and Salvesen's cooperation, after the fact, there is little reason for a difference in the result obtained. Salvesen's violations of his clients' trust were actually worse.

BRACHTENBACH, J. (concurring)—While I signed the majority, I concur with Justice Stafford.